11-1490-cr
USA v. Gonzalez

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2011

(Argued:  April 20, 2012                    Decided:  July 19, 2012)

Docket No. 11-1490-cr

_____

UNITED STATES OF AMERICA,

Appellee,

- v. -

OMAR GONZALEZ, a/k/a biotechresearch@hush.com,

Defendant-Appellant.

_____

Before: JACOBS, Chief Judge, KEARSE and McLAUGHLIN, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York, Colleen McMahon, Judge, convicting defendant of various narcotics offenses, see 21 U.S.C. §§ 846, 812, 841(a)(1), and 841(b)(1)(C), and imposing mandatory minimum prison term of 120 months pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B) for conspiracy involving 500 or more grams of cocaine despite indictment's lack of an express allegation as to narcotics quantity.

Remanded for resentencing.

HARRIS M. FISCHMAN, Assistant United States   Attorney, New York, New York (Preet Bharara, United States Attorney for the Southern District of New York, Aimee Hector, Justin S. Weddle, Assistant United States Attorneys, New York, New York, on the brief), for Appellee.

DAVID A. LEWIS, New York, New York (Federal Defenders of New York, Inc., Appeals Bureau, New York, New York, on the brief), for Defendant-Appellant.

KEARSE, Circuit Judge:

Defendant Omar Gonzalez appeals from a judgment entered in the United States District Court for the Southern District of New York following a jury trial before Colleen McMahon, Judge, convicting him on one count of conspiracy to distribute and to possess with intent to distribute cocaine, heroin, ketamine, and morphine, in violation of 21 U.S.C. § 846 (Count 1), and three substantive counts, to wit, distribution and possession with intent to distribute cocaine (Count 2) and attempting to distribute and to possess with intent to distribute morphine (Count 3) and ketamine (Count 4), all in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C). Gonzalez, a previously convicted felon, was sentenced principally to four concurrent terms of 120 months' imprisonment, the mandatory minimum provided by 21 U.S.C. §§ 846 and 841(b)(1)(B) for his conviction of conspiracy to traffic in 500 or more grams of a substance containing cocaine. On appeal, Gonzalez contends principally that the indictment under which he was convicted did not properly allege any quantified amount of cocaine and that he thus should have been sentenced under § 841(b)(1)(C), the penalty provision that does not depend on quantity and does not, except in circumstances not present here, provide a mandatory minimum prison term. Gonzalez also alleges that there were various errors in the conduct of the trial, and he requests a new trial in the event that he is not granted resentencing. For the reasons that follow, we conclude that Gonzalez is entitled to be resentenced under § 841(b)(1)(C).

# I. BACKGROUND

Many of the facts are not in dispute. The present prosecution of Gonzalez began in February 2010 after he shipped 50 grams of cocaine to United States Drug Enforcement Administration ("DEA") undercover Special Agent Neil Rubin and attempted to purchase ketamine and morphine from Rubin. The government's evidence at the November 15-19, 2010 trial included emails between Gonzalez and his narcotics suppliers or customers, as well as Rubin's testimony that Gonzalez sought to obtain morphine from Rubin in exchange for cocaine.

## A. The Second Superseding Indictment

Count 1 of the initial four-count superseding indictment against Gonzalez charged him with conspiring, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), and specified that "[t]he controlled substances involved in the offense were"--to the extent pertinent here--"mixtures and substances containing a detectable amount of cocaine in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(C)" (First Superseding Indictment ¶ 3, filed Oct. 14, 2010). Two weeks later, a second superseding indictment was filed, which read exactly the same as its predecessor except that, in the paragraph of Count 1 referring to "a detectable amount of cocaine," 841(b)(1)(C) was replaced by "841(b)(1)(**B**)." (Second Superseding Indictment ¶ 3, filed Oct. 28, 2010 (emphasis added).)

At Gonzalez's arraignment on the second superseding indictment, the Assistant United States Attorney ("AUSA") stated that in that new indictment "[t]he only change is that in the conspiracy count, Count One, the cocaine object is now a (b)(1)(B), 500 grams or more. That is the

only change." (Arraignment Transcript, November 2, 2010 ("A.Tr."), at 2.) The government also thereafter filed a "prior felony information" charging that Gonzalez had been convicted of three narcotics felonies in 2007.

Section 841(a)(1) of Title 21 makes it unlawful for a person knowingly or intentionally to, inter alia, distribute or possess with intent to distribute a controlled substance. Subsection (b)(1)(B) of § 841, to the extent pertinent here, provides that a person convicted of "a violation of [§ 841(a)] involving . . . 500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine"--if he or she has a prior conviction for a felony drug offense that has become final-- "shall be sentenced to a term of imprisonment which may not be less than 10 years." 21 U.S.C. § 841(b)(1)(B)(ii)(II). In contrast, subsection (b)(1)(C) of § 841 deals with indeterminate drug quantities; and unless death or serious bodily injury resulted from the use of the substance involved-- which was not alleged or shown here--subsection (b)(1)(C) does not establish a minimum term of imprisonment. See id. § 841(b)(1)(C). Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Id. § 846.

B. The Evidence at Trial

At trial, the government witnesses included Rubin, who testified to negotiations in which Gonzalez sought to buy ketamine and/or morphine in exchange for cash or cocaine. Gonzalez sought four kilograms of morphine and offered to pay Rubin 250 grams of cocaine per kilogram of morphine, i.e., one kilogram of cocaine. The government also introduced into evidence numerous

4

emails sent from the address "biotechresearch@hush.com"--which Gonzalez admitted was his--through "Hushmail," an encrypted email service provider that encoded email messages, permitting them to be accessed and read only by someone who had the encryption key. The emails introduced at trial by the government, decoded by Hushmail, included the following communications from Gonzalez:

- "Just got a nice shipment of Coke" willing to sell for "$50" per gram. (Government Exhibit ("GX") 919.)

- "I have a new lot of 'C'" acquired at a repeat-buyer "price break"; "I am passing that savings on to my customers" at "$825" per ounce. (GX 913.)

- "Sent 10g ket and 1.5g coke for you to test out." (GX 912, at 1.)

- Responding to an email complaining that a shipment of "C" from which the customer's customer "ma[de] crack" was only "67% pure" (GX 724, at 2), Gonzalez rejected the complaint, stating, inter alia, "I myself have tested this cocaine" (id. at 1).

- After receiving a request for prices "of C," Gonzalez responded "1/2kg = $11,000" and "1kg = $20,000." (GX 711.)

- "I will buy: Acetic anhydride from you first. That ok? $300 if you comply, I will buy KG of Coke. Ok?" (GX 928.)

- After receiving a request for prices of "your best H," Gonzalez responded that "Heroin, Pure 99% uncut," would be "8 ball = 3.5g for $1,500," "1g = $600," and ".5g = 350." (GX 921.)

- "We have sold out on pretty much everything we still have: Morphine tablets 15mg $6.00ea [and] Heroin uncut 99% pure - $1/mg." (GX 926.)

- "How much should I send you for 1kg cocaine or 1kg Heroin, shipped to Puerto Rico, USA?" (GX 927.)

The government also introduced FedEx shipment confirmations matching several of the shipments discussed in Gonzalez's emails.

Gonzalez testified in his own defense and essentially admitted his guilt on the

5

substantive distribution and attempted distribution charges against him. (See, e.g., Sentencing Transcript ("S.Tr.") at 9 ("[Gonzalez's Attorney]: . . . Mr. Gonzalez . . . did accept responsibility for what he did. THE COURT: That's true. He got on the stand and admitted to Counts Two, Three and Four.").) Gonzalez defended against the conspiracy count principally by testifying that, except for the 50 grams of cocaine he sent to Rubin, he had distributed only a sham substance, consisting principally of lidocaine, not cocaine.

C. The Objection to and the Sentence Under § 841(b)(1)(B)

On the second day of trial, Gonzalez's attorney, after receiving the government's proposed jury interrogatories with respect to Count 1, had objected to the court that trafficking in 500 or more grams of cocaine was not actually alleged in the second superseding indictment. Counsel pointed out that although that pleading cited 21 U.S.C. § 841(b)(1)(B), "[w]hat it doesn't say in this indictment is that there was over 500 grams of cocaine." (Trial Transcript ("Tr.") at 85.) He argued that, under Second Circuit case law, "drug quantity is an element" of the offense "that must always be pleaded and proved to a jury or admitted by [the] defendant" (id. at 86 (emphasis added)) in order to support a conviction and sentence under § 841(b)(1)(B), and that "the fact that they say ([b]) (1) (B) is . . . not enough. They have to allege the amount" (Tr. 85 (emphasis added)).

The district court rejected Gonzalez's argument, stating that because § 841(b)(1)(B) was referred to in the text of Count 1, rather than merely in the parenthetical citation at the end of the textual allegations, drug quantity was sufficiently charged to permit Gonzalez to be convicted and sentenced under that section:

[w]hen the relevant statutory section (i.e., the one specifying drug quantity) is

6

set forth in the text of the indictment, the drug quantity is sufficiently charged because the defendant is on notice from the text of the indictment that he is being charged with conspiring to possess and distribute a quantity of cocaine that qualifies him for enhanced sentencing.

In the indictment in this case the statutory section that references the 500 gram drug quantity is mentioned in the text of paragraph 3 of Count One of the indictment. That is, the defendant is specifically charged with conspiring to distribute and possess with intent to distribute an amount of cocaine that violates 21 United States Code, Section 841 (b)(1)(B). Therefore, the drug quantity is sufficiently charged in the indictment.

(Tr. 134-35 (emphasis added).)

In submitting the case to the jury, the court, over Gonzalez's objection, gave the jury a special interrogatory on drug quantity and instructed, inter alia, that, if the jury found Gonzalez had been a member of the narcotics conspiracy alleged in Count 1, it should make a finding as to "the quantity of cocaine [involved] in the conspiracy." (Tr. 395.) The jury found Gonzalez guilty on all counts. In response to the interrogatory asking whether "the conspiracy charged in Count One involve[d] 500 grams or more of mixtures and substances containing cocaine," the jury answered in the affirmative. (Id. at 408-09.)

After receiving a presentence report and submissions from the parties, the district court sentenced Gonzalez, in a non-Guidelines sentence (see S.Tr. 13-14), principally to four concurrent terms of 10 years' imprisonment. The court stated, with respect to Gonzalez's conviction on Count 1, that that is "the mandatory minimum that I have to sentence you to. I have no choice, I have to sentence you to 10 years. . . . I can't go below that." (Id. at 11; see id. at 14.) Gonzalez was also ordered to forfeit $55,000, representing the proceeds of the four offenses of conviction.

Judgment was entered accordingly, and Gonzalez has appealed, arguing principally that the court erred in sentencing him to the 10-year minimum prison term required by 21 U.S.C.

7

§ 841(b)(1)(B) for a conspiracy involving 500 or more grams of cocaine, because that quantity was not sufficiently pleaded in the indictment.  For the reasons that follow, we agree.

## II.  DISCUSSION

"Any discussion of the purpose served by a grand jury indictment in the administration of federal criminal law must begin with the Fifth and Sixth Amendments to the Constitution."  Russell v. United States, 369 U.S. 749, 760 (1962).  The Fifth Amendment provides, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."  U.S. Const. amend. V.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."  Id. amend. VI.

In the district court, defense counsel pursued Gonzalez's Fifth Amendment right by asking, "Can the Court at least ask the government whether they actually presented the quantity issue to the grand jury?" (Tr. 186).  The court declined, apparently focusing on Gonzalez's Sixth Amendment right, as it stated that the citation of the statutory section in the text of Count 1 "gives the defendant notice which is what allegations are supposed to be for" (id.).  However, Gonzalez does not appear to have been arguing that any issue as to drug quantity should be excluded from the case for lack of notice.  The AUSA at Gonzalez's arraignment on the second superseding indictment had stated "that in the conspiracy count, Count One, the cocaine object is now a (b)(1)(B), 500 grams or more" (A.Tr. 2); and Gonzalez's attorney had told the court that, "[f]rankly, the only reason . . . this case is going to trial is to beat the ([b]) (1) (B)" (Tr. 182 (emphasis added); see also id. at 86).

8

At oral argument of this appeal, Gonzalez expressly disclaimed any contention that he was deprived of his Sixth Amendment right to adequate notice. Rather, he pursues his Fifth Amendment contention--which he first raised on the morning of the second day of trial--that because Count 1 of the second superseding indictment did not state the quantity of cocaine allegedly involved in the conspiracy but merely cited the statutory penalty section that would be applicable if there were an allegation that 500 or more grams of cocaine were involved, his right to indictment by a grand jury was violated. As Gonzalez was subjected to the enhanced penalty provided by § 841(b)(1)(B) without a factual allegation as to quantity in the indictment, and without factual allegations in the indictment from which the grand jury's determination to charge such a quantity could be inferred, we conclude that Gonzalez should instead have been sentenced under § 841(b)(1)(C).

A. The Fifth Amendment Right to Indictment by Grand Jury

Under the Fifth Amendment, a defendant has a "'substantial right to be tried only on charges presented in an indictment returned by a grand jury.'" United States v. Miller, 471 U.S. 130, 140 (1985) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)). An indictment that does not set out all of the essential elements of the offense charged is defective. See, e.g., Miller, 471 U.S. at 143 ("'a court cannot permit a defendant to be tried on charges that are not made in the indictment against him'" (quoting Stirone, 361 U.S. at 217)); Russell, 369 U.S. at 763. "The Fifth Amendment made the" right to indictment by grand jury "mandatory in federal prosecutions in recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings." Smith v. United States, 360 U.S. 1, 9 (1959); see, e.g., Miller, 471 U.S. at 143 n.7.

"'The right to have the grand jury make the charge on its own judgment is a substantial

right which cannot be taken away with or without court amendment.'" Id. at 139 (quoting Stirone, 361 U.S. at 218-19). "'[T]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.'" United States v. Thomas, 274 F.3d 655, 670 (2d Cir. 2001) (en banc) ("Thomas") (quoting Stirone, 361 U.S. at 218 (Thomas's emphasis omitted)); see also United States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976) ("Camp") (an indictment that is defective for failure to allege an essential element is not rescued by prosecutorial advice in the nature of a bill of particulars stating the element, because the "grand jury d[oes] not see or participate in preparing [a] bill of particulars"); see generally Russell, 369 U.S. at 770 ("it is a settled rule that a bill of particulars cannot save an invalid indictment").

> [A] grand jury "belongs to no branch of the institutional Government," but rather "serv[es] as a kind of buffer or referee between the Government and the people." . . . Thus, it would be inappropriate for a court to speculate as to whether a grand jury might have returned an indictment in conformity with the available evidence, because such an exercise would work the harm the Grand Jury Clause is intended to prevent--a federal prosecution begun by arms of the Government without the consent of fellow citizens.

Thomas, 274 F.3d at 670 (quoting United States v. Williams, 504 U.S. 36, 47 (1992) (emphasis in Thomas)).

Rule 7(c) of the Federal Rules of Criminal Procedure provides, in part, that

> [t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . . A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment . . . must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1) (emphases added). The wording of this Rule imposes "two requirements[: ]the statement of the essential facts and the citation of the statute. They are separate requirements and not a restatement of one another," Camp, 541 F.2d at 740 (first emphasis in original; second emphasis added); and it has long been the rule in this Circuit that a deficiency in an indictment's factual allegations of the elements of an offense is "not cured by" the fact that the relevant count "cited the statute that [the defendant] is alleged to have violated," United States v. Berlin, 472 F.2d 1002, 1008 (2d Cir.) ("Berlin") (citing cases), cert. denied, 412 U.S. 949 (1973).

In Berlin, for example, Berlin was charged with aiding and abetting a mortgage applicant's making a false statement for the purpose of obtaining mortgage insurance, in violation of 18 U.S.C. § 1010. Although an essential element of that offense is that the offender had knowledge of the falsity of the statement that was made, the indictment did not include an allegation that Berlin knew of the falsity of the statements or documents the applicant submitted. We ruled that

> [t]his deficiency was not cured by the fact that each count cited the statute that appellant is alleged to have violated. Although the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated.

472 F.2d at 1008 (emphases added).

Most of our Sister Circuits agree. See, e.g., United States v. Gerhard, 615 F.3d 7, 23 n.6 (1st Cir. 2010) ("the usual rule [is] that statutory citations cannot normally supply a missing element in an indictment"), cert. denied, 131 S. Ct. 1536 (2011); United States v. McLennan, 672 F.2d 239, 243 (1st Cir. 1982) (government "argu[ment] that by itself [the relevant] statutory reference reveals the nature of the underlying offense" is an argument that "runs contrary to the canon that

statutory citations cannot normally supply the missing element in an indictment," a rule that, at least "[i]n indictments for being a principal, . . . is too far settled to be questioned" (emphasis added)); United States v. Roach, 321 F.2d 1, 3-4 & n.6 (3d Cir. 1963) (18 U.S.C. § 2113(c) prohibits receipt of funds knowing that they have been "taken from" a financial institution "in violation of subsection (b) of this section"; the omission of an allegation that the defendant knew the funds were taken "in violation of" § 2113(b) is not cured by the indictment's citation to § 2113(c) (emphases omitted)); United States v. Hooker, 841 F.2d 1225 (4th Cir. 1988) (en banc) (requirement that an indictment plead "all elements [of the offense charged] . . . derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present," id. at 1230; "[i]t is elementary that every ingredient of crime must be charged in the [indictment], a general reference to the provisions of the statute being insufficient," id. at 1228 (internal quotation marks omitted)); United States v. Conley, 349 F.3d 837, 840 (5th Cir. 2003) ("[A] lone statutory reference is inadequate to charge a defendant in a constitutionally permissible manner. . . . The test of the validity of an indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. . . . [A] statutory citation cannot, standing alone, meet this test." (footnote omitted) (internal quotation marks omitted)); United States v. Wabaunsee, 528 F.2d 1 (7th Cir. 1975) ("omission of an essential element of the offense charged was more than an obvious technicality and was fatal to the indictment," and the indictment's "reference to the statute containing the offense" did not "cur[e] the defect," id. at 3; "[w]here nothing in the context of the indictment can be construed to supply the missing element, . . . the mere citation of the statute cannot supply it," id. at 4); United States v. Campbell, 270 F.3d 702, 709 (8th Cir. 2001) ("when the indictment fails to charge an essential element of a crime, it fails to allege a violation of the statute;

12

mentioning the statute in the indictment is not enough" (emphasis omitted)), cert. denied, 535 U.S. 946 (2002); United States v. Ellis, 525 F.3d 960, 963 (10th Cir.) ("a citation to a statute is not part of the indictment and cannot substitute for a recitation of the elements of the offense"), cert. denied, 129 S. Ct. 318 (2008).

In sum, "[s]tating that an act is 'in violation of'" a cited statutory section "adds no factual information as to the act itself. It declares the legal basis for claiming that the act is deserving of punishment, but does nothing to describe the act"; "[o]nly the words of the indictment give evidence of whether the grand jury considered and included within the offense charged the essential element." Camp, 541 F.2d at 740 (emphases added). "Stated another way," the mere citation of a statutory section "is of scant help in deciding whether the grand jury considered [the] . . . essential element." Id. "If citation of the statute were a statement of the facts, nothing beyond a citation would be necessary. Surely no one could assert persuasively that an indictment that merely charged that a defendant violated a cited statute would suffice as an indictment." Id.

These principles have obvious application to the present prosecution. "After Apprendi[ v. New Jersey, 530 U.S. 466 (2000)], drug type and quantity are elements of the offense under 21 U.S.C. § 841 that must be charged in the indictment . . . ." Thomas, 274 F.3d at 673. Thomas reached this conclusion with respect to drug quantities that, if pleaded and proven, may be the basis for a sentence above the statutory maximum authorized for an offense involving an indeterminate quantity of drugs. See id. And in United States v. Gonzalez [Manuel], 420 F.3d 111 (2d Cir. 2005) ("Gonzalez (Manuel)"), we concluded that drug quantity must likewise be considered an element of the offense if it may trigger a statutory minimum:

[b]ecause mandatory minimums operate in tandem with increased maximums

in § 841(b)(1)(A) and -(b)(1)(B) to create sentencing ranges that "raise the limit of the possible federal sentence," . . . drug quantity must [also] be deemed an element for all purposes relevant to the application of these increased ranges.

Gonzalez (Manuel), 420 F.3d at 129 (quoting Shepard v. United States, 544 U.S. 13, 24 (2005) (plurality opinion) (emphases ours)); see Gonzalez (Manuel), 420 F.3d at 129 ("The Apprendi rule applies to the resolution of any fact that would substitute an increased sentencing range for the one otherwise applicable to the case."); id. at 115 & n.2 ("the statutory drug quantity is an element in all prosecutions of aggravated § 841 offenses"--i.e., "crimes defined by reference to the lettered subsections of § 841(b)(1) that provide for enhanced penalties for drug trafficking in specified quantities").

Thus, in order for a "conviction or sentence on an aggravated offense under § 841(b)(1)(A) or -(b)(1)(B)" to be sustainable, "drug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant." Gonzalez (Manuel), 420 F.3d at 131 (emphasis added). "If a defendant is convicted only on a lesser unquantified drug charge, he must be sentenced pursuant to § 841(b)(1)(C), which generally provides no mandatory minimum sentence." Id.

In United States v. Doe, 297 F.3d 76 (2d Cir. 2002) ("Doe"), we considered a prosecution for conspiracy to import cocaine in violation of importation provisions that largely parallel the provisions prohibiting domestic drug trafficking. Just as 21 U.S.C. § 841(b) provides enhanced penalties for narcotics trafficking in specified quantities, 21 U.S.C. § 960(b) provides enhanced penalties for specified quantities' importation. The count of the indictment at issue in Doe alleged, in relevant part, that Doe "did knowingly and intentionally conspire to import into the United States from a place outside thereof cocaine, a Schedule II narcotic drug controlled substance, in violation of

14

Title 21, United States Code, Section 952(a)," and a parenthetical following this allegation included a citation to "Title 21, United States Code, Section[] . . . 960(b)(1)(B)(ii)," 297 F.3d at 80. Section 960(b)(1)(B)(ii) specifies penalties for violations of § 952(a) involving, inter alia, "5 kilograms or more" of cocaine; but there was no allegation in the indictment that Doe had in fact conspired to import that quantity.

The Doe opinion noted our holding in Berlin that the mere citation to a statutory section is not sufficient to cure a defective indictment that fails to allege all the elements of an offense. See Doe, 297 F.3d at 85. We also noted in Doe that the failure of an indictment to allege an essential element expressly might not make the relevant count fatally defective if "a reading of the indictment in its entirety allowed inference of the final element." Id. (citing United States v. Hernandez, 980 F.2d 868, 871-72 (2d Cir. 1992) ("Hernandez")). However, we found in Doe's indictment no language referring to any particular quantity:

> Doe's indictment confined to a parenthetical string citation the sole suggestion of the quantity of drugs involved in the offense, an amount that did not alter the physical act . . . with which Doe was charged, but did affect the penalty to which he would be subject for that act. . . . [N]either the omitted quantity element of Doe's intended charge, nor the fact that an element was omitted, could be inferred from the text of the indictment[;] discovery of either required consideration of the subsequent parenthetical and outside resources . . . .

Doe, 297 F.3d at 85 (emphasis added).

In Hernandez, a prosecution for, inter alia, conspiracy to possess with intent to distribute heroin, the conspiracy count of the indictment alleged that the defendants conspired to possess heroin, but neglected to allege that the planned possession was with intent to distribute. See 980 F.2d at 870. However, we found that that count was not fatally defective in light of the indictment's references to the neglected element--both explicit and implicit: The caption of the

15

*Hernandez* indictment read, in part, "'VIOLATIONS: 21 U.S.C. § 841(a)(1) and 846 (Conspiracy to Possess a Controlled Substance with Intent to Distribute),'" *Hernandez*, 980 F.2d at 869 (emphasis ours); and the quantity of heroin alleged in the conspiracy count was "100 grams and more of a mixture and substance containing a detectable amount of heroin," id. at 870 (emphasis added), a sufficiently "large quantity of heroin" from which "one may infer an intent to distribute," id. at 871-72. We concluded that the conspiracy count's allegation of such a quantity, and its citation to "§ 841(a)(1)," which requires proof of intent to distribute, and "the precise language used in the caption" were sufficient to allege the requisite intent element. 980 F.2d at 871-72. Accord United States v. Gama-Bastidas, 222 F.3d 779, 786-87 (10th Cir. 2000) (citing *Hernandez*).

In *Doe*, we noted that *Hernandez* dealt with a conspiracy count in which, inter alia, "the citation to the statutory provision [that specified] the omitted element, intent to distribute, appeared in the text of the indictment," rather than, as in *Doe*, merely in a parenthetical following the factual allegations of unlawful conduct. *Doe*, 297 F.3d at 85 (internal quotation marks omitted). In the present case, the district court concluded that *Doe*'s reference to the placement of the *Hernandez* indictment's citation "in the text" of the count meant that the mere placement of the citation in the text made the indictment sufficient. (Tr. 134-35.) We disagree.

Although the *Doe* opinion noted that the *Doe* and *Hernandez* indictments differed with respect to the location of the statutory citations, location was plainly not the only difference. *Doe*, noting a defendant's "Fifth Amendment right to grand jury indictment," 297 F.3d at 88 n.12, found it "unclear whether or not the grand jury made specific findings on the drug quantities involved," id., given that the *Doe* citation of the penalty section constituted "the sole suggestion" in the indictment "of the quantity of drugs involved in the offense," id. at 85. That citation "provide[d] little information

16

as to the grand jury's quantity conclusions." Id. at 88 n.12. The Hernandez indictment, in contrast, as described above, contained not only a citation, but also language from which one could clearly infer that the grand jury intended to allege the intent-to-distribute element that was missing from the text of the conspiracy count. That language included the caption using the words "with intent to distribute" and the conspiracy count's express allegation of a drug quantity sufficiently large to imply an intent to distribute. While some parts of the Doe opinion are not entirely clear, it is plain that Doe distinguished Hernandez not only because the pertinent citation appeared in the text of the Hernandez count, but also because of the above-described "language of the [Hernandez] indictment," Doe, 297 F.3d at 85: Doe described Hernandez as "allow[ing] a lone statutory citation to charge an element of a crime only when, despite the omission of the element itself from the indictment's text," the unexpressed element could permissibly be inferred from "a reading of the indictment in its entirety," id. (emphases added).

In the present case, Gonzalez timely challenged Count 1 of the second superseding indictment for failure to allege cocaine quantity, raising that issue at the start of the second day of trial. See generally Fed. R. Crim. P. 12(b)(3)(B) ("at any time while the case is pending, the court may hear a claim that the indictment . . . fails . . . to state an offense"). The government, while acknowledging that Gonzalez's challenge was made while the case was pending, argues that because it was made shortly before the government was to rest, the second superseding indictment should be construed liberally in favor of sufficiency, see, e.g., United States v. Sabbeth, 262 F.3d 207, 218 (2d Cir. 2001) ("the level of scrutiny given to an indictment falls along a continuum depending on the timing of a defendant's objection"). Even were we to agree that the second superseding indictment here should be so read, we find in it no helpful language to construe. Insofar as drug quantity is concerned, the

17

second superseding indictment contains only the citation to § 841(b)(1)(B); it includes no caption or other language that carries any implication as to quantity, or any other language that provides a basis for inferring that quantity was considered by the grand jury.

Nor can we accept the government's contention that the second superseding indictment should be deemed sufficient because the only evident purpose for its filing was to charge drug quantity, which it did by changing the statutory citation--as it appeared in the first superseding indictment--from § 841(b)(1)(C) to § 841(b)(1)(B). The question, however, is not whether that was the purpose for making the change, but whether making that change was a decision to charge drug quantity reached by the grand jury. Indictments are drafted by the prosecutors, and prosecutors supply the requisite statutory citations. We have no reason to believe that members of a grand jury, in determining what charges to bring, think in terms of statutory subsections rather than in terms of facts. The text of an indictment gives the necessary assurance that the grand jurors knew and agreed to charge that which the text describes; but it gives no comparable assurance that the grand jurors considered or were advised as to the terms of a statutory section that is referred to only by a naked number. (The government has not proffered and we have not requested the transcript (if any) of the prosecutor's advice to the grand jurors, and we express no view as to whether such a transcript could remedy a defective indictment.) If it was indeed the intention of the grand jury to allege that Gonzalez conspired to distribute and possess with intent to distribute 500 grams or more of cocaine, we would expect the grand jury to have alleged that fact in words, rather than by simply changing a letter in a statutory citation.

In sum, we adhere to the principle recognized in Hernandez and applied in Berlin and Doe, that citation to a statutory section is not, by itself, sufficient to cure a defective indictment that

18

fails to allege all the elements of an offense. The simple reference to a drug-quantity-based penalty provision--whether located in a parenthetical following the text or placed in the text and set off by commas--without any language alleging the factual predicate for application of that penalty, and without any other allegations that reasonably permit the inference that the grand jury intended to charge the defendant with the quantity necessary for application of that penalty, is not a sufficient allegation of drug quantity. Adoption of the government's position to the contrary would plainly elevate form over substance, would facilitate indictments that contain no factual allegations, and would provide no assurance that an indictment reflects the judgment of a grand jury rather than only that of the prosecutor.

We conclude that the second superseding indictment was insufficient to support Gonzalez's sentencing under 21 U.S.C. § 841(b)(1)(B). He should have been sentenced under § 841(b)(1)(C), which deals with indeterminate quantities of narcotics and which, in Gonzalez's case, did not require the imposition of a minimum prison term. Because the district court sentenced Gonzalez to concurrent prison terms of 10 years in the belief that, on Count 1, that was "the mandatory minimum that [it] ha[d] to sentence [him] to" (S.Tr. 11), we remand for the court to resentence Gonzalez, on all counts, pursuant to § 841(b)(1)(C).

B. Gonzalez's Other Contentions

In his brief on appeal, Gonzalez asserted various challenges to the conduct of his trial. At oral argument, Gonzalez informed us that he wishes to pursue those challenges only if he is not granted resentencing. Having ruled that he is entitled to resentencing, we thus do not address other issues.

CONCLUSION

We have considered all of the government's arguments in support of Gonzalez's sentencing pursuant to 21 U.S.C. § 841(b)(1)(B) and have found them to be without merit. The matter is remanded for resentencing as indicated above.