14-2267(L)
*United States v. Thompson*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of December, two thousand fifteen.

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge*,
ROSEMARY S. POOLER,
DENNY CHIN,
*Circuit Judges*.

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

MICHAEL THOMPSON and TYLON VAUGHN, a/k/a Bucky B,

*Defendants-Appellants*,

CHRISTOPHER MORLEY, a/k/a White Boy Chris, GREGORY ACCETURA, a/k/a Leg, BERNARD BYRD, a/k/a BB, a/k/a Chip, JASON DAURIA, MICHAEL DELUCA, CHRISTEN EDWARDS, WILLIAM FITZGERALD, a/k/a Quay, JESSIE HOPKINS, a/k/a Wes, KAI JACKSON, a/k/a Killer Kai, RICHIE JONES, a/k/a Slick, BRITT MARTIN, a/k/a Big Baby,

No. 14-2267(L)
No. 14-2599(Con.)

1

ANDREW MELILLO, MICHAEL MELILLO,
ANTHONY MICARELLI, ROBERT MORRIS,
JOSEPH RAO, MARQUIS WINFREY, a/k/a
Quisy, ANTWAIN YOPP, a/k/a Skeletor, ROBERT
MELILLO, Jr., a/k/a Mike,

*Defendants*.

---

For Appellee: MARC H. SILVERMAN (S. Dave Vatti and Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, CT.

For Defendant-Appellant Michael Thompson: JONATHAN J. EINHORN, New Haven, CT.

For Defendant-Appellant Tylon Vaughn: Sebastian O. DeSantis, New London, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Burns, *S.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings.

Defendant-Appellant Michael Thompson appeals a judgment of conviction entered on June 25, 2014, following a jury verdict of guilty on one count of conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine, 280 grams or more of cocaine base, and an indeterminate quantity of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), 841(b)(1)(C), and 846. Co-Defendant-Appellant Tylon Vaughn appeals a judgment of conviction entered on June 27, 2014, and amended on July 29, 2014, following a jury verdict of guilty on one count of conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base and 50 kilograms or more of marijuana, in violation of §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(a)(A)(iii), 841(b)(1)(C), and

2

846, and with two substantive counts of possessing with intent to distribute and distribution of cocaine base, in violation of §§ 841(a)(1) and 841(b)(1)(C). The United States District Court for the District of Connecticut (Burns, *S.J.*) conducted the joint trial of Thompson and Vaughn and imposed their respective sentences. In this summary order, we address the bulk of Thompson's and Vaughn's arguments on appeal; Thompson's remaining argument concerning his obstruction-of-justice sentencing enhancement is addressed in a separate opinion issued concurrently with this summary order. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

First, Thompson appeals the district court's denial of his motion to suppress evidence obtained from his apartment at the time of his arrest. "When a defendant challenges the denial of a suppression motion, we review the district court's factual findings for clear error, viewing the evidence in the light most favorable to the government," but "[o]ur review of the district court's legal conclusions is *de novo*." *United States v. Odeh*, 552 F.3d 177, 198 (2d Cir. 2008). Because "[v]oluntariness is a question of fact to be determined from all the circumstances," *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973), we generally "review a district court's finding that consent to search was voluntary for clear error," *United States v. Moreno*, 701 F.3d 64, 72 (2d Cir. 2012). "Under this standard, '[if] the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently.'" *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

Here, Thompson consented to a search of his apartment, but he contends that his consent was involuntary. The district court determined that Thompson's consent was voluntary based on

the totality of the circumstances, including Thompson's personal characteristics, the atmosphere in the apartment at the time Thompson consented, and Thompson's written consent. The only dispute on appeal is what Officer David Rivera said to Thompson and whether this statement renders Thompson's consent involuntary. The district court concluded that Rivera informed Thompson that he was seeking a warrant and that everyone in the apartment could be arrested if evidence of contraband was found, and it rejected Thompson's contrary assertion that Rivera threatened to arrest Thompson's sister and girlfriend unless he consented to a search. Thompson conceded at oral argument that he has no basis for contending that the district court's factual finding as to what Rivera said was clearly erroneous, and he does not challenge any of the district court's other factual findings.

We are left, then, with Thompson's contention that it is impermissibly coercive for an officer to inform a suspect that he is obtaining a warrant and that everyone present in the location to be searched could be arrested if evidence of contraband were found. We are not aware of any authority holding that such a statement, standing alone, would be impermissibly coercive; in fact, available authority points to the contrary. *See, e.g.*, *United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983) ("[A]dvising a person of the fact that a search warrant can be obtained does not constitute coercion."); *United States v. Mullens*, 536 F.2d 997, 1000 (2d Cir. 1976) ("[N]o federal court has yet held that a confession or consent is involuntary solely on the ground that it was prompted by the defendant's desire to protect a relative from the rigors of arrest, interrogation and possible confinement."); *see also United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006). Nor can we conclude that the district court's finding of voluntariness under all the circumstances presented here is clearly erroneous.

4

Second, Thompson and Vaughn appeal the district court's denial of their motions to suppress communications intercepted pursuant to a Title III order. In one such interception (referred to as session 4111), the government overheard 20 seconds of background conversation on a phone that was not the target of a Title III order after that phone dialed a target phone but before the target phone answered the call. Although we have some concerns with the district court's suppression ruling, we need not reach this issue because the government never admitted the challenged portion of the call into evidence and Thompson and Vaughn do not contend that the challenged portion of the call led to the discovery of other evidence that should have been suppressed as fruit of the poisonous tree. Thus, any error in denying the suppression motion is harmless. *See* Fed. R. Crim. P. 52(a); *see also United States v. Friedman*, 300 F.3d 111, 128 (2d Cir. 2002) ("In undertaking a harmless-error analysis, we must determine 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999))).

Thompson and Vaughn also argue that session 4111 demonstrates that the government's wiretaps amounted to a "roving bug" or a "roving wiretap" for which the government did not have proper authorization. Vaughn Br. 23–27; *see also* 18 U.S.C. §§ 2518(11)(a)–(b) (providing that the specification requirements of §§ 2518(1)(b)(ii) and (3)(d) do not apply under certain circumstances). Aside from session 4111, however, Thompson and Vaughn do not point to any other instances of similar unauthorized recordings. Nor is there any indication that the government used the authorized wiretaps to record non-target phones or locations. Even session 4111 was intercepted only because Vaughn dialed a phone that was subject to a Title III order. Thompson and Vaughn's "roving" argument is therefore meritless.

Third, Thompson argues that the district court erred when it permitted a government witness to testify about two field tests showing that substances found on Thompson were cocaine or cocaine base (i.e., "crack"). "We review a district court's rulings about the admissibility of trial evidence for abuse of discretion, which means that we set aside its decision if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *United States v. Vilar*, 729 F.3d 62, 82 (2d Cir. 2013) (citations and internal quotation marks omitted).

Thompson argues that "[t]he field tests described by the officers should not have been submitted to the jury as they were only presumptive of the presence of cocaine and were not proof beyond a reasonable doubt." Thompson Br. 23. Although Thompson frames his argument in terms of admissibility, the substance of his argument is really about sufficiency of the evidence; that is, he appears to argue that the field tests were insufficient proof to support the jury's verdict that the substances involved in the conspiracy were cocaine and cocaine base.

We have made clear that "neither actual drug exhibits nor reports of chemical analysis are required to support a conviction for possession of a controlled substance." *United States v. Gaskin*, 364 F.3d 438, 460 (2d Cir. 2004) (citing *United States v. Bryce*, 208 F.3d 346, 353–54 (2d Cir. 1999)). Rather, "[l]ay testimony and circumstantial evidence may be sufficient [to support a conviction], without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction." *Id.* (quoting *Bryce*, 208 F.3d at 353). Moreover, "[s]uch circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction [or] evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug." *Bryce*, 208 F.3d at 353 (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976)). Thus, Thompson's

argument is unavailing for the simple reason that circumstantial evidence, such as testimony concerning field tests, need not be corroborated with chemical analysis to support a narcotics conviction. And aside from his contention that field tests are not "proof beyond a reasonable doubt," Thompson offers no other basis for concluding that it was error for the district court to admit this circumstantial evidence, which is sufficient to support a narcotics conviction.

Fourth, Thompson asserts that the district court improperly limited his cross-examination of the government's key witness, Christopher Morley, because the district court declined Thompson's request to unseal a financial affidavit that Morley submitted in support of his application for *in forma pauperis* status. "We review for abuse of discretion a district court's decision to preclude evidence offered to impeach a witness." *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013); *see also United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011) (noting that abuse of discretion applies "even where the basis for challenging [cross-examination] restrictions is the Confrontation Clause").

The Supreme Court has made clear that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Of greatest relevance here is the district court's prerogative to limit cross-examination if the defendant has other equally effective avenues to attack a witness's credibility. *See, e.g., United States v. Vitale*, 459 F.3d 190, 196 (2d Cir. 2006); *United States v. Salameh*, 152 F.3d 88, 131–32 (2d Cir. 1998); *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990).

Thompson's brief does not explain what he hoped to obtain from Morley's financial affidavit; he only vaguely suggests that it would have provided an additional avenue for attacking Morley's credibility. Thompson's argument is meritless for at least two reasons. To

7

begin with, it is undisputed that Morley's *in forma pauperis* application was granted, meaning that Morley was found to be indigent. Thus, the financial affidavit showing Morley's indigent status would not add much to what was already known based on his *in forma pauperis* status. What is more, both Thompson and Vaughn extensively cross-examined Morley on his finances, exploring the issue from many angles. Because Thompson had other equally effective avenues to attack Morley's credibility and because the "jury [was] in possession of facts sufficient to make a 'discriminating appraisal' of [Morley's] credibility," *Roldan-Zapata*, 916 F.2d at 806 (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)), the district court did not improperly limit Thompson's cross-examination of Morley.

Fifth, both Thompson and Vaughn assert sufficiency of the evidence arguments but on different grounds. Thompson does not contest the jury's finding that he was a member of the charged conspiracy, but he does contest the jury's cocaine and cocaine base quantity findings. Vaughn contests both the jury's conspiracy finding and the jury's cocaine base quantity finding. Except for the jury's cocaine quantity finding with respect to Thompson, we can identify no basis to disturb the jury's verdict based on the sufficiency of the evidence. We therefore reject all of Thompson's and Vaughn's sufficiency-of-the-evidence arguments with the exception of Thompson's argument concerning the jury's cocaine quantity finding.

When a defendant challenges his conviction based on the insufficiency of the evidence presented against him,

> [t]he test established by the Supreme Court requires us to determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. Put another way, a court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.

8

*United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006) (citations and internal quotation marks omitted). We have described this as a "heavy burden." *Id.* at 137.

As relevant here, a "[c]onviction of a Section 841(b)(1)(A) conspiracy also requires that a jury find, or the defendant himself admit to, the drug-quantity element. Additionally, we require proof that this drug type and quantity were at least reasonably foreseeable to the co-conspirator defendant." *United States v. Adams*, 448 F.3d 492, 499 (2d Cir. 2006) (citation omitted). That is,

> [t]he defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved. Ultimately, the question is whether the conspiracy-wide quantity was within the scope of the criminal activity the defendant agreed to and whether the activity in question was foreseeable to the defendant.

*United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citations omitted).

We conclude that there was insufficient evidence for the jury to find that the quantity of cocaine charged in the indictment—five kilograms or more—was reasonably foreseeable to Thompson. The government's key witness, Morley, testified that during the entire time frame of the conspiracy, from December 2006 through May 2012, he and co-conspirator Britt Martin purchased approximately 40 kilograms of cocaine. He explained that he "would sell a lot of the powder [cocaine] to [his] customers, [and] Martin would sell the crack form cooked up." App. 480. Morley specified that, at least when his business "was really booming," which was most of the 2011 calendar year, he sold "90 percent" of the cocaine involved in the conspiracy himself. App. 574. In response to government questioning, Morley further testified that he supplied varying amounts of cocaine to Thompson that totaled two kilograms over the course of the entire conspiracy and that Thompson converted one of these two kilograms of cocaine into cocaine base. Morley also testified that he purchased from Thompson a "[c]ouple hundred grams [of cocaine] over time" when Morley was unable to obtain it from his regular source. App. 510.

9

The above-summarized testimony from Morley provides evidence of the amount of cocaine involved in the conspiracy, but the government points to no evidence from which a jury could have determined the amount of cocaine that was reasonably foreseeable to Thompson. Instead, the government points to evidence supporting the existence of a "strong relationship" between Morley and Thompson. The full extent of this evidence includes: (1) Morley turned to Thompson for a couple hundred grams of cocaine when he could not get it from his regular supplier; (2) Morley contributed to Thompson's bond following his arrest; (3) Morley sold a firearm to Thompson; (4) Morley lent a vehicle to Thompson; (5) on a single phone call with Thompson, Morley indirectly mentioned getting a "roundabout figure" of cocaine from some "guy"; (7) on a single phone call Morley referred to his relationship with Martin; (8) Morley provided drugs to Thompson on credit; and, (9) at Morley's request, Thompson supplied cocaine base to another co-conspirator on several occasions.

To further support its foreseeability argument, the government points to a conversation between Morley and Thompson in which Thompson says, "It used to be a good drug business, now it isn't anymore," App. 538, and the two jokingly equate their earlier drug activities to a Fortune 500 company (the hyperbole of this comment is clear from its context). From this evidence, the government contends that "[a] reasonable jury could determine that [the two kilograms and few hundred grams of cocaine] and [$64,000 that Thompson owed to Morley] surely indicated to Thompson that Morley was distributing vast amounts of cocaine." Gov't Br. 23. But all of this evidence merely supports a finding that Thompson reasonably could have foreseen something above the two kilograms and few hundred grams of cocaine that he bought or sold through Morley. There is nothing other than mere speculation for the jury to get from two-point-something kilograms to more than five kilograms.

As noted, foreseeability in the context of a drug-trafficking conspiracy does not require actual knowledge of specific quantities of narcotics. But our past cases involving foreseeable, as opposed to known, drug quantities presented evidence of specific drug quantities and a link from those quantities to a basis for inferring that the quantities would have been reasonably foreseeable to the defendant—a basis that is wholly lacking here. *See, e.g.*, *United States v. Jackson*, 335 F.3d 170, 183 (2d Cir. 2003) (finding co-conspirator's imported quantities reasonably foreseeable based on testimony about specific trips that co-conspirators took to and from the United States, the specific amounts of cocaine that coconspirators transported on those trips, and the defendant's awareness of these many trips); *Snow*, 462 F.3d at 72 (rejecting defendant's challenge to offense-level calculation based on drugs seized at one of three nearby houses that other members of the conspiracy used to cut and package drugs, citing evidence that the defendant was involved in multiple transactions at the other two nearby houses); *United States v. Richards*, 302 F.3d 58, 70 (2d Cir. 2002) (affirming district court's finding that defendant could have foreseen 100 kilograms or more of marijuana based on the quantities that he "personally received and the amounts he should have known others were receiving, given his overall knowledge of Richards's marijuana operation").

Morley testified that he gave Thompson varying quantities of cocaine that totaled two kilograms (one of which was converted into cocaine base) and that Thompson gave him only a few hundred grams of cocaine. Further, Morley testified that he sold 90% of the cocaine himself when the conspiracy was "booming," and there is no evidence indicating Thompson's general awareness of the vast amounts of cocaine that Morley was selling on his own. For example, there is no evidence that Thompson was present at other drug transactions, was aware of other distributors selling cocaine for Morley, knew of Morley's finances or expenditures, or frequently

11

visited Morley's base of operations. Based on the trial evidence, the jury could have inferred that it was reasonably foreseeable to Thompson that the conspiracy involved more than the amount of cocaine that he and Morley exchanged, but it was pure speculation for the jury to conclude that it was reasonably foreseeable to Thompson that the conspiracy involved more than twice that amount.

We agree with the government, however, that a new trial is not warranted. Instead, we REMAND Thompson's case for resentencing under 21 U.S.C. § 841(b)(1)(C), following the procedure courts have used when an indictment failed to charge a specific quantity of narcotics. *See, e.g.*, *United States v. Gonzalez*, 686 F.3d 122, 133 (2d Cir. 2012); *United States v. Thomas*, 274 F.3d 655, 673 (2d Cir. 2001). Finally, the government notes in passing that the statutory penalties set forth in § 841(b)(1)(A) applied to Thompson regardless of the jury's cocaine attribution, but we cannot say with certainty that the district court would have imposed the same sentence based on a lower cocaine quantity finding. A remand for Thompson's resentencing is therefore appropriate.

For the reasons stated herein and in an accompanying opinion, the judgment of the district court is **AFFIRMED** in part and **REVERSED** in part, and the case is **REMANDED** for further proceedings.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk