**UNITED STATES of America,**

v.

**Llesh BIBA, Defendant.**

**09–cr–836 (DLI)**

United States District Court, E.D. New York.

Signed 11/07/2016

Elizabeth Geddes, United States Attorneys Office, Brooklyn, NY, for United States of America.

## OPINION AND ORDER

DORA L. IRIZARRY, Chief Judge:

Llesh Biba ("Defendant") is charged by indictment with conspiracy to commit robbery, attempted robbery, and use of a firearm during crimes of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 1951(a), for his alleged role in two attempted armed robberies committed in August 2006. Defendant now moves to dismiss, either entirely or in part, Count Three and Count Six of the indictment, which are the charges related to use of a firearm during crimes of violence. (*See* Def. Mot. to Dismiss ("Motion to Dismiss" or "Mot. to Dismiss"), Dkt. Entry No. 14.) For the reasons set forth below, the Motion to Dismiss is granted insofar as the charges pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) in Counts Three and Six are dismissed, without prejudice, and the motion otherwise is denied.

## BACKGROUND

### A. The Charged Conduct

On May 8, 2008, the government filed a sealed complaint against Defendant for his role in two attempted robberies of homes located in Staten Island, New York, and Ansonia, Connecticut. (*See* Sealed Complaint and Affidavit in Support of an Arrest Warrant ("Complaint" or "Compl."), *United States v. Llesh Biba*, 08–mj–442,

Dkt. Entry No. 1.) The Complaint was supported by, *inter alia*, consensual recordings made by a confidential informant (the "CI"), of two conversations with one of Defendant's coconspirators (the "CC"). (*Id.* at ¶¶ 3–5, 12–14.) With respect to the Staten Island attempt, the CC told the CI that on August 17, 2006, Defendant drove him and another man to a home that they believed contained money belonging to a labor union official. (*Id.* at ¶¶ 3, 13.) As recorded by the CI, the CC and the other man, both of whom were dressed like law enforcement officers, entered the home where they encountered a female caretaker. (*Id.* at ¶ 13.) After they restrained her, the CC displayed a handgun to the caretaker. (*Id.*) When the caretaker managed to escape the restraints, one of the two men tackled her, causing a commotion that alerted the neighbors. (*Id.*) The men then allegedly fled the scene, jumped into the car Defendant was driving, and Defendant drove the trio away from the home. (*Id.*)

The Complaint further alleges that, on August 29, 2006, Defendant was involved in a second attempted robbery, this time of a drug trafficker's residence in Ansonia, Connecticut. (*Id.* at ¶ 7.) According to an interview investigators conducted with a female witness, Defendant and a co-conspirator entered the witness' apartment with handguns and asked to meet with her landlord who lived upstairs. (*Id.*) When Defendant and the co-conspirator met with the landlord outside of the apartment, the pair physically assaulted the landlord, cracking his skull. (*Id.* at ¶¶ 7–8.) The witness also allegedly suffered injuries when she attempted to intervene in the assault and either Defendant or his co-conspirator hit her in the head with a handgun. (*Id.*) The two men later ran down the street to a vehicle, which took them away from the scene. (*Id.* at ¶ 8.)

### B. Defendant's Agreement with the Government and Subsequent Flight to Canada

Following Defendant's arrest on May 13, 2008, Defendant entered into a cooperation agreement dated September 2, 2008, with the government (Agreement between L. Biba and the United States Attorney's Office for the Eastern District of New York (the "Agreement"), Dkt. Entry No. 16, Ex. A), in which Defendant stipulated to his involvement in both robbery attempts set forth in the Complaint. Of relevance here, Defendant agreed that: (i) with respect to the Staten Island attempt, he "knew that one of his coconspirators was carrying a firearm to assist him in the robbery conspiracy," and (ii) with respect to the Ansonia attempt, Defendant and his coconspirator "used and carried firearms" (Agreement ¶ 5). The Agreement also set forth terms by which Defendant would "cooperate fully with [the government]." (*Id.* at ¶ 2.)

After initially cooperating for a period of time, Defendant was arrested on a state rape charge on November 7, 2009 (*see* Case No. 334–2009, New York State Supreme Court, Richmond County, Criminal Term), released on bond, and subsequently fled to Canada (Letter from J. London to Hon. Sandra L. Townes, dated Apr. 18, 2016). Defendant spent the next six years fighting extradition to the United States, but was returned on April 15, 2016. (*Id.*)

### C. The Indictment

On December 10, 2009, just over a month after Defendant's state arrest, a federal grand jury returned the indictment in this case (the "Indictment," Dkt. Entry No. 1), which charges, for each of the incidents described above, conspiracy to commit robbery (Counts One and Four), attempted robbery (Counts Two and Five), and use of a firearm during crimes of violence (Counts Three and Six). The only counts at issue for purposes of the present motion are Counts Three and Six. Count Three, the count related to the Staten Island attempt, states:

> On or about August 17, 2006, within the Eastern District of New York and elsewhere, the defendant LLESH BIBA, together with others, did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearm in furtherance of said crimes of violence.
>
> (Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 et seq.)

(Indictment at 2.) Count Six, the count regarding the Ansonia attempt, is the same in all respects except for the date ("August 29" instead of "August 17") and the related counts ("Counts Four and Five" instead of "Counts One and Two"). (*Id.* at 3–4.)

### D. Defendant's Motion to Dismiss

On August 25, 2016, Defendant moved to dismiss Counts Three and Six of the Indictment. (Mot. to Dismiss.) Defendant's principal argument is that (i) a conspiracy or attempt to commit Hobbs Act robbery is not a "crime of violence" as defined in 18 U.S.C. § 924(c)(3) and (ii) the "risk-of-force clause," 18 U.S.C. § 924(c)(3)(B), is unconstitutionally vague. Defendant acknowledges that Second Circuit recently has rejected these arguments in the context of a completed Hobbs Act robbery, *see United States v. Hill*, 832 F.3d 135 (2d Cir. 2016), but argues that *Hill* can be distinguished from the conspiracy and attempt counts set forth in the Indictment here. (Mot. to Dismiss at 7.) Defendant also notes that because the *Hill* decision on

vagueness is at odds with decisions in other circuits, he seeks to preserve the argument in the event it is addressed by the Supreme Court. (*Id.* at 1, 5 n.2.)

Defendant's alternative argument takes issue with only a portion of Counts Three and Six, arguing that the government was required to allege expressly that he "brandished" a firearm in order for the government's charge under 18 U.S.C. § 924(c)(1)(A)(ii) to stand. Defendant asserts that because "brandishing" has been recognized as element of the offense, *see Alleyne v. United States*, — U.S. —, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the failure to include this charge expressly in the Indictment constitutes a violation of his Fifth and Sixth Amendment rights. (*Id.* at 8–9.) Although Defendant acknowledges that the Indictment cites to the statute for "brandishing" a firearm, he argues that the citation alone does not provide "adequate notice of what is the core of criminal behavior that the government will seek to prove at trial." (*Id.* at 8.)

For the reasons explained below, the Court dismisses, without prejudice, the charges of Counts Three and Six for "brandishing" a firearm pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), but otherwise denies Defendant's Motion to Dismiss.

## DISCUSSION

### I. Motion to Dismiss Counts Three and Six

#### A. Statutory Framework

Counts Three and Six charge Defendant with violating 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(A)(ii), which provides, in pertinent part:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . ., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in ad-

dition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

18 U.S.C. § 924(c)(1)(A)(i)–(ii). The statute, in turn, defines "crime of violence" as an offense that is a felony and either:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). § 924(c)(3)(A) is commonly referred to as the "force clause" and § 924(c)(3)(B) as the "risk-of force clause." *See Hill*, 832 F.3d at 138.

The crimes of violence alleged in the Indictment were the Hobbs Act robbery counts charged as Counts One and Two for the Staten Island robbery attempt, and Counts Three and Four for the Ansonia robbery attempt, respectfully. (*See* Indictment; *see also* 18 U.S.C. § 1951.) The Hobbs Act robbery statute punishes a person who "in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." 18 U.S.C. § 1951(a). The statute defines "robbery" as:

the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or

violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

## B. Legal Standard

 Courts are required to employ the "categorical approach" when evaluating whether an offense constitutes a crime of violence. *Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The Second Circuit Court of Appeals has advised that this approach "is not only consistent with both precedent and sound policy but also necessary in view of the language of the applicable statutes." *Hill* 832 F.3d at 139 (citations, internal quotation marks and alterations omitted). Pursuant to the categorical approach "a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015) ("*Johnson 2015*") (quoting *Begay v. United States*, 553 U.S. 137, 141, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)). In doing so, the court is to "identify 'the minimum criminal conduct necessary for conviction under a particular statute.'" *Hill*, 832 F.3d at 139 (quoting *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam)). In this case, as in *Hill*, "the categorical approach requires [the court] to consider the minimum conduct necessary for a conviction of the predicate offense (in this case, a Hobbs Act robbery), and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A)." *Hill*, 832 F.3d at 139.

## C. Application

Defendant challenges Counts Three and Six by invoking the reasoning of the United States Supreme Court's two "*Johnson*" decisions that defined the scope of what constitutes a "violent felony" under the Armed Career Criminal Act ("ACCA"). Defendant sets forth two separate theories in this regard. Defendant's principal argument is that an attempt or conspiracy to commit a Hobbs Act robbery as set forth in 18 U.S.C. § 1951 should not be considered a "crime of violence" as defined in 18 U.S.C. § 924(c)(3) because the offense categorically need not involve "violent force" or "strong physical force," as the Supreme Court has required when assessing the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B). *See Johnson v. United States*, 559 U.S. 133, 138, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) ("*Johnson 2010*"). (Mot. to Dismiss at 2–4.) Defendant acknowledges that *Hill* held that a Hobbs Act robbery constitutes a crime of violence under the force clause, *see* 832 F.3d at 137, but tries to distinguish *Hill* by arguing that: (i) *Hill* involved a completed Hobbs Act robbery, not an attempt or conspiracy to commit one; and (ii) the Second Circuit cases holding that a Hobbs Act conspiracy is classified as a crime of violence "substantially-predated *Johnson (2010)* and *Johnson (2015)*." (Mot. to Dismiss at 7.) Defendant also seeks to preserve his argument that, under the reasoning of *Johnson 2015*, the "risk-of-force" clause contained in 18 U.S.C. § 924(c)(3) is unconstitutionally vague, while recognizing that the Second Circuit squarely rejected this argument in *Hill*. (*See* Mot. to Dismiss at 5 n.2.)

The government opposes, contending that conspiracy or attempt to commit Hobbs Act robbery are crimes of violence as they include the threatened use of physical force, and also that, pursuant to *Hill*,

§ 924(c)(3)(B) is not unconstitutionally vague.

### 1. Conspiracy to Commit Hobbs Act Robbery is a Crime of Violence.

■ In *Hill*, the Second Circuit held that a Hobbs Act robbery constitutes a crime of violence under both the force clause and the risk-of-force clause. *Hill*, 832 F.3d at 140–50. Addressing an issue of first impression in this Circuit as to the force clause, the court rejected the defendant's argument that Hobbs Act robberies accomplished through "fear of injury ... to his person or property" categorically did not meet the definition of a crime of violence pursuant to the Supreme Court's reasoning in *Johnson 2010*. *Id.* at 141; *see Johnson 2010*, 559 U.S. at 140, 130 S.Ct. 1265. Specifically, the Circuit held that the defendant's argument rested on a flawed reading of *Johnson 2010* that would require "a particular quantum of force be employed or threatened to satisfy its physical force requirement." *Hill*, 832 F.3d at 142. Instead, the court held that, under *Johnson 2010*'s reasoning, "physical force" in § 924(c)(3)(A) "means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property." *Id.* (emphasis in original).[1] In addition, the court rejected the defendant's argument that a Hobbs Act robbery could be committed without "using or threatening the use of physical force" by, for example, poisoning a victim, as the defendant could not show that there was a realistic probability that the Hobbs Act would reach the conduct defendant described in his hypothetical examples. *Id.* at 142–44; *see Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007).

Importantly, the *Hill* court also held that, even if Hobbs Act Robbery did not qualify as a crime of violence pursuant to § 924(c)(3)(A), "such a robbery unequivocally qualifies as a crime of violence pursuant to § 924(c)(3)(B) because it, 'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Hill*, 832 F.3d at 145 (quoting 18 U.S.C. § 924(c)(3)(B)). Moreover, as discussed more fully below, the Circuit also rejected the defendant's argument that § 924(c)(3)(B) is unconstitutionally vague in light of *Johnson 2015*.

Defendant urges this Court to find a distinction between the completed Hobbs Act robbery at issue in *Hill* and an attempt or conspiracy to commit a Hobbs Act robbery, as charged in Counts One, Two, Four and Five. Defendant argues that "[a]n attempted Hobbs Act robbery can be accomplished by attempting to put someone in fear of future injury to his person or property, which does not require the attempt to use or threaten to use 'violent force' while a Hobbs Act conspiracy can be accomplished by mere agreement without any overt act." (Mot. to Dismiss at 4.) Although Defendant acknowledges that the Second Circuit previously has found that a Hobbs Act conspiracy constitutes a crime of violence, *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991), he contends that the Circuit's holding should be reevaluated in light of *Johnson 2010* and *Johnson 2015*. (Mot. to Dismiss at 7.)

Defendant's contention that conspiracy to commit a Hobbs Act robbery is not a crime of violence is meritless and is con-

---

1. The only difference between the statute at issue in *Johnson 2010*, 18 U.S.C. § 924(e)(2)(B)(i), and the statute at issue here, 18 U.S.C. § 924(c)(3)(A), is that "crime of violence" is defined in the latter to include crimes having "as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." § 924(c)(3)(A) (emphasis added).

tradicted by both *Hill* and this Circuit's precedent. Indeed, the Second Circuit in *Hill* implicitly approved of its prior holding in *DiSomma* that "conspiracy to commit Hobbs Act robbery is a crime of violence under the Bail Reform Act (which employs the same definition of the term as in § 924(c)(3)) because one of the elements of the offense 'is actual or threatened use of force' and 'if the element of violence is not present, no conviction under section 1951 can occur.'" *Hill*, 832 F.3d at 140 (quoting *DiSomma*, 951 F.2d at 496). Although this observation is dicta, this Court is bound by *DiSomma* until further guidance from the Circuit or the Supreme Court, especially where, as here, the Circuit tacitly reaffirmed its holding.

Moreover, even if a fresh look at *DiSomma* was warranted in light of the categorical approach that was endorsed by the Supreme Court years after that decision, the prevailing Second Circuit law on conspiracies in the context of crimes of violence also weighs against Defendant's argument. In *United States v. Patino*, the Circuit held that a conspiracy to commit a crime that has been recognized as a crime of violence is itself a crime of violence:

> A conspiracy, by its very nature, is a collective criminal effort where a common goal unites two or more criminals. Such a meeting of the minds enhances the likelihood that the planned crime will be carried out. Thus, when a conspiracy exists to commit a crime of violence ... the conspiracy itself poses a "substantial risk" of violence, which qualifies it under Section 924(c)(1) and Section 924(c)(3)(B) as a crime of violence.

962 F.2d 263, 267 (2d Cir. 1992) (citation omitted). The Second Circuit later expressly applied this logic to a conspiracy to commit a Hobbs Act robbery. *United States v. Elder*, 88 F.3d 127, 129 (2d Cir.

1996) ("Thus, a Hobbs Act conspiracy to commit robbery is by definition a conspiracy that involves a substantial risk that physical force may be used against the person or property of another."). Although these decisions predate *Johnson 2010*, the logic of *Patino*'s holding that a conspiracy to commit a recognized crime of violence is itself a crime of violence was left undisturbed by *Johnson 2010*. In addition, although the specific challenge that Defendant brings here does not appear to have been raised in this Circuit in the short time since *Hill* was decided, at least one court has declined a Defendant's request to vacate a sentence for conspiracy to commit Hobbs Act robbery in light of *Johnson 2015* and *Hill*. See *Ubiera v. United States*, 2016 WL 4597616 (S.D.N.Y. Sept. 2, 2016).

For these reasons, the Court finds that a conspiracy to commit Hobbs Act robbery is a crime of violence. Accordingly, Defendant's motion to dismiss Counts Three and Six on the basis that it is not a crime of violence is denied. As the Court finds that the conspiracy charges, Counts One and Four, are crimes of violence for purposes of establishing predicate crimes for Counts Three and Six, respectively, it need not reach the question of whether the attempts to commit Hobbs Act robberies (Counts Two and Five), if charged in the absence of the conspiracy charges, would have been sufficient to serve as the predicate crimes.

### 2. The "Risk-of-Force Clause" is Not Unconstitutionally Vague.

██ As discussed above, Defendant concedes that his argument that the risk-of-force clause is unconstitutionally vague is the same argument that was rejected by the Second Circuit in *Hill*. (Mot. to Dismiss at 5 n.2; *see Hill*, 832 F.3d at 145–50.) In *Hill*, the Court held that "the Supreme Court's explanation for its conclusion in [*Johnson 2015*] renders that case inapplicable to the risk-of-force clause at

issue here," because, *inter alia*, § 924(c)(3)(B) "does not involve the double-layered uncertainty present in" the statute at issue in *Johnson 2015*. *Hill*, 832 F.3d at 146. By "double-layered uncertainty," the court was referring to the layers of the ACCA provision at issue that "required courts employing the categorical approach first to estimate the potential risk of physical injury posed by 'a judicially imagined 'ordinary case' of [the] crime' at issue, and then to consider how this risk of injury compared to the risk posed by the four enumerated crimes, which are themselves, the Court noted, 'far from clear in respect to the degree of risk each poses.'" *Hill*, 832 F.3d at 145 (quoting *Johnson 2015*, 135 S.Ct. at 2557–58) (alteration in *Hill*).

In holding that the risk-of-force clause did not suffer from the same defects as the statute at issue in *Johnson 2015*, this Circuit expressly split from the law in four other circuits (the Fifth, Sixth, Seventh and Ninth) which have held that 18 U.S.C. § 16(b), a statute that is materially the same as the risk-of-force clause, is void for vagueness. *Hill*, 832 F.3d at 149. In announcing the split, the Second Circuit criticized strongly the reasoning set forth in the opinions of those four circuits, opining that each decision: (i) "greatly underestimates—or misunderstands—the significance of the list of enumerated offenses in the ACCA's residual clause to the decision in [*Johnson 2015*] in part by failing to engage with the precedent that preceded, and informed, that decision," (ii) "ignore[s] or minimize[s] the other textual distinctions between the residual clause and the language of § 16(b)" and (iii) "dismisses the significance of the Supreme Court's fraught precedent interpreting the ACCA's residual clause." *Hill*, 832 F.3d at 149–50.

As Defendant has acknowledged that his vagueness argument is no different from that rejected by the court in *Hill*, his motion to dismiss Counts Three and Six on that basis is denied.

## II. Motion to Dismiss the "Brandishing" Charges in Counts Three and Six

### A. Legal Standard

"The Grand Jury Clause of the Fifth Amendment generally protects a person from prosecution in a federal court 'for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'" *United States v. Lee*, 833 F.3d 56, 67 (2d Cir. 2016) (quoting U.S. Const. amend. V.). The Sixth Amendment provides the added protection that a defendant is entitled to adequate notice "of the nature and cause of the accusation[s]" against him. *See* U.S. Const. amend. VI. The Supreme Court has found an indictment to be sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The Supreme Court has clarified further that "[e]lements of a crime must be charged in an indictment." *United States v. O'Brien*, 560 U.S. 218, 224, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010). In particular, as it relates to the instant motion, the Supreme Court recently held that "brandishing" a weapon is an element of a crime because it increases the penalty to which a defendant is subjected. *See Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 2163–64, 186 L.Ed.2d 314 (2013).

Certain requirements of an indictment have been found to be essential, even

though "[a]n indictment ... need not be perfect, and common sense and reason are more important than technicalities." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001) (citation omitted). Of particular relevance to the Indictment here, the Second Circuit has held that Rule 7(c) of the Federal Rules of Criminal Procedure "imposes 'two requirements[:] the statement of the essential facts *and* the citation of the statute. *They are separate requirements and not a restatement of one another.*'" *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (quoting *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976)) (first emphasis contained in *Camp*; second emphasis added in *Gonzalez*).

## B. Application

Defendant argues that Counts Three and Six of the Indictment did not properly charge brandishing as an element of 18 U.S.C. § 924(c)(1)(A)(ii), as is required by the Fifth and Six Amendments and the Supreme Court's holding in *Alleyne*. Counts Three and Six of the Indictment allege, in pertinent part, that Defendant "did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence ... and did knowingly and intentionally possess such firearm in furtherance of said crimes of violence." This language tracks that of 18 U.S.C. § 924(c)(1)(A), which allows the government to seek punishment for "any person who, during and in relation to any crime of violence or drug trafficking crime ..., *uses* or *carries* a firearm, or who, in furtherance of any such crime, *possesses* a firearm." *Id.* (emphasis added). Notably, Counts Three and Six do not include any allegation that Defendant "brandished" a firearm under § 924(c)(1)(A)(ii), which would subject Defendant to minimum term of imprisonment of seven years, two years more than the five-year minimum prison

term required if a firearm were not brandished.

The government does not dispute that it failed to charge Defendant properly for brandishing a firearm under § 924(c)(1)(A)(ii), but argues, alternatively, that: (i) any errors in Counts Three and Six of the Indictment are harmless because Defendant is on notice of the brandishing charge; or (ii) even if the errors are not harmless, Defendant's motion should be denied pursuant to the fugitive disentitlement doctrine, as Defendant should not be permitted to benefit from a change in the law that occurred while he was awaiting extradition. (Mem. in Opp. to Mot. to Dismiss ("Gov. Opp."), Dkt. Entry No. 16.) The government cannot prevail under either argument.

## 1. The Charges Pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) Are Deficient.

■ The government's argument that its failure to properly state the brandishing charge constitutes harmless error has no merit. The government's initial assertion that the citation to the statute, standing alone, puts defendant on notice of the government's intent to pursue a charge for brandishing ignores established precedent that a citation by itself is never sufficient. (*See* Gov. Opp. at 13.) The Second Circuit has made clear that "a deficiency in an indictment's factual allegations of the elements of an offense is 'not cured by' the fact that the relevant count 'cited the statute that [the defendant] is alleged to have violated.'" *Gonzalez*, 686 F.3d at 128 (quoting *United States v. Berlin*, 472 F.2d 1002, 1008 (2d Cir.) (citing cases), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001, (1973)). In *Berlin*, for example, the government's failure to allege the proper *mens rea* of the charged offense "was not cured by the fact that each count cited the statute that [the defendant was] alleged to have violated." *Berlin*, 472 F.2d

at 1008. The court reasoned that, "[a]lthough the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated." *Id.* at 1008; *see Gonzalez* 686 F.3d at 128. In *Gonzalez*, the Second Circuit further observed that a citation to a "statutory section 'adds no factual information as to the act itself. *It declares the legal basis for claiming that the act is deserving of punishment, but does nothing to describe the act*'; '[o]nly the *words* of the indictment give evidence of *whether the grand jury* considered and included within the offense charged the essential element.'" *Gonzalez,* 686 F.3d at 129 (quoting *Camp,* 541 F.2d at 740 (all emphases and alterations added in *Gonzalez* )). The unmistakable takeaway from *Berlin* and *Gonzalez* is that the government's citation to the brandishing statute cannot cure its failure to properly allege brandishing as an element of § 924(c)(1)(A)(ii).

The government's assertion that Defendant's awareness of the brandishing charge solves the deficiency of Counts Three and Six equally is unavailing. (*See* Def. Opp. at 13–14.) The government urges this Court to follow *United States v. Lee,* in which the Second Circuit found that the failure to specify in an indictment the value of the goods allegedly stolen by the defendant constituted harmless error because it was clear that the defendant "had notice throughout that the government intended to prove" the valuation for a felony rather than a misdemeanor. 833 F.3d at 72. As an initial matter, while instructive, *Lee* is of limited application here because the procedural posture of the two cases are drastically different. Notably, the Circuit's assessment of the indictment in *Lee* was conducted following a jury trial, and

the court was considering whether the error in the indictment at issue was adequate in light of the entire trial record. *Lee,* 833 F.3d at 68–73. However, the Second Circuit also has advised that the "timing of a defendant's objection [to an indictment] is important to the level of scrutiny employed; a defendant who objects to the indictment before trial ... is entitled to a more exacting review of the indictment than one who waits until after the trial to object." *United States v. Pirro,* 212 F.3d 86, 92 (2d Cir. 2000). As Defendant's objection here is made pretrial, this Court is not bound to adhere strictly to *Lee's* reasoning, which was made post-trial.

Nevertheless, even if the Court were to apply the rationale of *Lee* to this case, the Court still finds the government's notice arguments unconvincing. The government principally contends that: (i) Defendant had notice of the charges because the government's intent to pursue a seven-year term of imprisonment was set forth in a plea agreement that was provided to him; and (ii) his notice of the charge is established by Defendant's filing of the present motion. (*See* Def. Opp. at 13–14.) However, these arguments completely disregard the Supreme Court's holding in *Alleyne* that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne,* 133 S.Ct. at 2155 (citing *Apprendi v. New Jersey,* 530 U.S. 466, 483 n.10, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

First, although the Court has not had the benefit of having reviewed the plea agreement, the government's description

of the relevant provision suggests that it only contained information concerning the length of the sentence the government was pursuing against him, but did not reveal the elements of the charge to which the seven-year sentence was correlated, which is the key information missing from the Indictment.

Second, the government's argument that the act of filing the motion at issue proves Defendant's knowledge of the brandishing charge is not supported by the record or the law. Indeed, the Court interprets Defendant's motion to seek confirmation that a charge under § 924(c)(1)(A)(ii) will not be pursued trial—a confirmation that was made necessary due to the ambiguity of the Indictment. The Court does not read Defendant's motion to contain presuppositions of the government's intent to pursue such a charge. (*See* Mot to Dismiss at 9 ("... Counts Three and Six, *insofar as they charge Mr. Biba with brandishing a firearm*, must be dismissed.") (emphasis added).) This distinguishes the present case from *Lee*, where the court found notice was established where "Lee's counsel candidly admitted to the district court that he had 'always believed the government was seeking to prosecute [Lee] for a felony.'" *Lee*, 833 F.3d at 72 (alteration in original). In any event, the theory for denial articulated by the government, that a Defendant's filing of a motion to dismiss charges that are not sufficiently alleged in an indictment proves, *ipso facto*, satisfactory notice of such charges, cannot be one a Defendant is required to meet, because it seemingly would preclude all challenges to an indictment's sufficiency.

For these reasons, the Court finds that Defendant was not informed properly of the nature of the charges stated in Counts Three and Six, which constitutes a violation of his Sixth Amendment rights. *See Pirro*, 212 F.3d at 95. Moreover, as a result of this error, "the grand jury may not have understood the elements of the crime and the evidence necessary to support the indictment, as is required by the Fifth Amendment." *Id.*

## 2. The Court Declines to Apply the Fugitive Disentitlement Doctrine.

■ As the Court has found the charges for violating § 924(c)(1)(A)(ii) to be deficient, the government asks the Court to deny Defendant's motion pursuant to the fugitive disentitlement doctrine. The Court declines to apply the fugitive disentitlement doctrine to this case as doing so would extend the doctrine beyond its intended application.

■ The fugitive disentitlement doctrine has long been recognized by the Supreme Court as a tool that allows courts "to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) (citations omitted). The doctrine, which provides courts with "discretion to refuse to rule on the merits of a defendant's postconviction claims of trial error when the defendant has fled from justice," *United States v. Bravo*, 10 F.3d 79, 83 (2d Cir. 1993), is employed most frequently by appellate courts to punish fugitives who flee while their appeals are pending. *See Gao v. Gonzales*, 481 F.3d 173, 175 (2d Cir. 2007) ("... [T]he paradigmatic object of the doctrine is the convicted criminal who flees while his appeal is pending ....") (citation omitted); *see also Ortega–Rodriguez v. United States*, 507 U.S. 234, 247, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) ("Once jurisdiction has vested in the appellate court ... then any deterrent to escape must flow from appellate consequences, and dismissal may be an appropriate sanction by which to deter."). However, district courts

also have the authority to invoke the doctrine and punish a fugitive, either current or former, for flouting the judicial process. *See, e.g. United States v. Morgan*, 254 F.3d 424, 426–27 (2d Cir. 2001) (affirming a district court's decision to apply the fugitive disentitlement doctrine in denying a defendant's motion to withdraw his guilty plea after he had been recaptured); *United States v. Hayes*, 118 F.Supp.3d 620, 624–27 (S.D.N.Y. 2015), *appeal dismissed* (Mar. 15, 2016) (finding that the fugitive disentitlement doctrine barred the motion to dismiss of a fugitive defendant who had refused to submit to the court's jurisdiction).

■■■ In assessing whether to apply the doctrine, courts weigh the following factors: "(1) whether a decision on the merits would be enforceable; (2) whether the defendant is flouting the judicial process; (3) whether a decision on the merits would encourage similar flights from justice; and (4) whether the defendant's evasion prejudices the Government." *Hayes*, 118 F.Supp.3d at 624. *See United States v. Zedner*, 555 F.3d 68, 77 (2d Cir. 2008).

The Court declines to apply the fugitive disentitlement doctrine in this case because doing so would extend the doctrine past its current confines and deprive Defendant of fundamental rights guaranteed under Fifth and Sixth Amendments. Although the doctrine is no doubt a well recognized and useful means of discouraging a defendant's flight, it cannot be the case that a district court's discretionary tool can be used to deprive a defendant of a right guaranteed by the Constitution. Indeed, the government has not cited a single case, and this Court has found none, where a court has employed the doctrine in such a manner. The closest example appears to be *United States v. Morgan*, which involved a district court's application of the doctrine to a defendant who had fled and was rearrested, as is the case here. 254 F.3d 424 (2d Cir. 2001). However, in *Morgan*, the defendant previously had entered a knowing and voluntary guilty plea, thereby expressly waiving certain rights otherwise guaranteed to him. *See Morgan*, 254 F.3d at 425. Indeed, in all of the cases cited by the government, the court has applied the doctrine only after a defendant had either waived or already availed himself of his constitutional rights, or where defendant was a fugitive at the time the doctrine was employed. In contrast, Defendant here has not waived the Fifth and Sixth Amendment rights that would be violated by forcing him to face a deficient indictment.

Even if these constitutional concerns were not present, the Court is not convinced that the fugitive disentitlement doctrine applies to this situation. While the Court agrees that Defendant here clearly flouted the judicial process by fleeing to Canada, it is not clear that imposing the doctrine as the government requests is necessary to discourage future flight from justice. The Supreme Court has recognized that flight can be "deterred with the threat of a wide range of penalties available to the district court judge." *Ortega–Rodriguez*, 507 U.S. at 247, 113 S.Ct. 1199 (citation omitted). Specifically, in *Ortega–Rodriguez*, the Court observed that:

> should ... a defendant flee while his case is before a district court, the district court is well situated to impose an appropriate punishment. While an appellate court has access only to the blunderbuss of dismissal, the district court can tailor a more finely calibrated response. Most obviously, because flight is a separate offense punishable under the Criminal Code ... the district court can impose a separate sentence that adequately vindicates the public interest in

deterring escape and safeguards the dignity of the court.

*Id.* at 247–48, 113 S.Ct. 1199. Moreover, the Court is skeptical that a defendant who is otherwise determined to evade authorities would comply with bail conditions only out of fear that he would not receive the benefit of unanticipated changes to the law in the future.

The government also overstates the prejudice it will suffer if the charges under § 924(c)(1)(A)(ii) are dismissed. If the government is correct that Defendant waived the statute of limitations or that the new charge would relate back, the government need only seek a superseding indictment that properly states the new charges. The Court also notes that, although the government is correct that the Indictment was returned at a time when "brandishing" was recognized to be a sentencing factor rather than an element of the crime, and, therefore, was not required to be stated in an indictment, *see Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the United States Attorney's Office for the Eastern District of New York nonetheless appears to have followed a practice for years prior to the Supreme Court's decision in *Alleyne* of expressly charging "brandishing" in the indictment when seeking an enhanced sentence under § 924(c)(1)(A)(ii). *See, e.g.,* Superseding Indictment, *U.S. v. Wade*, 05–cr–16, Dkt. Entry No. 26; Superseding Indictment, *U.S. v. Lloyd*, 10–cr–622, Dkt Entry No. 26; Redacted Superseding Indictment, *U.S. v. Valasquez*, 11–cr–639, Dkt. Entry No. 122. Had that practice been followed in this case, the Indictment would be immune from the present challenge.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss is granted insofar as the charges pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) in Counts Three and Six are dismissed, without prejudice, and the motion otherwise is denied.

SO ORDERED.