UNITED STATES of America,

v.

Earl MCCOY and Matthew
Nix, Defendants.

6:14–CR–06181 EAW

United States District Court,
W.D. New York.

Signed 01/25/2017

428

Robert Marangola, U.S. Attorney's Office, Rochester, NY, for Plaintiff.

Mark D. Hosken, Federal Public Defender, Rochester, NY, for Defendant.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

## I. BACKGROUND

Defendants Earl McCoy ("McCoy") and Matthew Nix ("Nix") (collectively "Defendants"), represented by counsel, both stand accused by way of a 12–count Third

Superseding Indictment, returned on January 5, 2017, as follows:

Count 1: Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a);

Count 2: Use of firearms during and in relation to a crime of violence (the Hobbs Act conspiracy as set forth in Count 1), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2;

Count 3: Attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2;

Count 4: Use of firearms during and in relation to a crime of violence (the attempted Hobbs Act robbery as set forth in Count 3), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2;

Count 5: Attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2;

Count 6: Use of firearms during and in relation to a crime of violence (the attempted Hobbs Act robbery as set forth in Count 5), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2;

Count 7: Narcotics conspiracy, in violation of 21 U.S.C. § 846;

Count 8: Possession of firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2;

Count 11: Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and

Count 12: Use of a firearm during and in relation to a crime of violence (the Hobbs Act robbery set forth in Count 11), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.

(Dkt. 165). In addition, Nix and McCoy are each charged separately, in Counts 9 and 10 respectively, with possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 2. (*Id.* at 6–7).

A jury trial is presently scheduled to commence in this matter on Friday, February 3, 2017, and, in advance of that trial, numerous motions have been filed by Defendants. The purpose of this Decision and Order is to set forth the Court's resolution [1] of the following relief requested by Defendants: (1) Defendants' renewals of their previously-filed pretrial motions, as set forth in the motion filed by McCoy at Docket 179 and the motion filed by Nix at Docket 180; (2) Defendants' motions to dismiss Counts 5 and 6 of the Third Superseding Indictment on the ground that the charges fail to recite an essential element of the substantive offense necessary for a finding of a Hobbs Act robbery, as set forth in the motion filed by McCoy at Docket 179 and the motion filed by Nix at Docket 180; (3) Defendants' motions to dismiss Count 2 of the Third Superseding Indictment on the ground that a Hobbs Act conspiracy is not a crime of violence, as set forth in the motion filed by Nix at Docket 180 and the motion filed by McCoy at Docket 183; and (4) Defendants' motions for severance, as requested in the motion filed by McCoy at Docket 179 and the motion filed by Nix at Docket 180.[2] For the reasons set forth below, the relief requested by Defendants is denied.

## II. DEFENDANTS' REQUEST FOR RENEWAL OF ALL PRIOR MOTIONS AND FOR DISMISSAL OF COUNTS FIVE AND SIX

McCoy "renews all previously filed motions with respect to this case and reaf-

---

1. The Court announced its resolution of these issues at the Court appearance on Friday, January 20, 2017, but indicated that it would be issuing a written Decision and Order setting forth the reasons for its conclusions.

2. The Court acknowledges that there is additional relief requested in pending motions filed by Defendants at Docket numbers 175, 183, 186, 187 and 191. The Court will address those issues in subsequent ruling(s).

firms each and every argument made therein as if fully set forth herein." (Dkt. 179-1 at 3). McCoy's notice of motion seeks "renewal of the motions previously filed ... on February 23, 2016 with respect to the identical courts [sic] contained in the Third Superseding Indictment and ... preserving all issues including the suppression issue raised with respect to the identification of the defendant as they apply to the counts contained in the Third Superseding Indictment." (Dkt. 179 at 1). Likewise, Nix "renews all previously filed motions with respect to this case and reaffirms each and every argument made therein as if fully set forth herein." (Dkt. 180 at 4).

McCoy also moves to dismiss Counts 5 and 6 of the Third Superseding Indictment, renewing an argument he set forth previously in his omnibus motions (Dkt. 69; Dkt. 109) and in his objections (Dkt. 141) to Magistrate Judge Marian W. Payson's Report and Recommendations (Dkt. 136). McCoy once again argues that because the Third Superseding Indictment, like the indictments that came before it, does not expressly state that he acted "knowingly" or "willfully" to obstruct commerce, the Third Superseding Indictment fails to recite an essential element of the substantive offense necessary for a finding of a Hobbs Act robbery, warranting dismissal. (Dkt. 179-1 at 3-4). Nix joins in this argument. (Dkt. 180 at 2).

■ The renewed motions, as well as the reiterated *mens rea*-based challenge to the Hobbs Act robbery, are subject to the law of the case doctrine. The law of the case doctrine "holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)

(first quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); then quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Reasons not to adhere to a prior decision include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at 1230 (quoting *Tenzer*, 213 F.3d at 39).

Here, in its Decision and Order, dated November 28, 2016, the Court adopted Magistrate Judge Payson's Report and Recommendation concerning Defendants' pretrial motions in its entirety. (Dkt. 152). Defendants offer no reasons—let alone any "cogent" or "compelling" reason—why the Court should depart from the conclusions that it reached in that November 28, 2016, Decision and Order, and the Court finds none. Thus, with respect to Defendants' renewed pretrial motions and *mens rea*-based argument, the Court reaches the same conclusions it did in its Decision and Order dated November 28, 2016.

## III. DEFENDANTS' REQUEST FOR DISMISSAL OF COUNT 2

Defendants are charged in the Third Superseding Indictment with a number of counts involving the alleged use of firearms during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Counts 2, 4, 6 and 12). The alleged basis for the crime of violence charged in Count 2 is the Hobbs Act conspiracy in violation of 18 U.S.C. § 1951(a), as charged in Count 1.

Nix moves to dismiss Count 2. (Dkt. 180 at 2-3). Nix argues that "Hobbs Act Conspiracy does not meet the definition of a 'crime of violence' as it can be committed even without the use, attempted use, or threated use of physical force against the person or property of another." (*Id.* at 3).

McCoy raises the same argument. (Dkt. 183–1 at 2).

## A. Relevant Statutes and Offenses Charged

Section 924(c)(1)(A)(ii) states, in relevant part, as follows:

[A]ny person who, during and in relation to any crime of violence ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ... if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

18 U.S.C. § 924(c)(1)(A)(ii). The statute sets forth two alternative definitions of a "crime of violence" in 18 U.S.C. § 924(c)(3):

For the purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is referred to as the "force clause," while subsection (B) is referred to as the "risk-of-force" clause." *United States v. Hill*, 832 F.3d 135, 138 (2d Cir. 2016).

The "crime of violence" alleged in Count 2 is Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a), involving an alleged conspiracy to commit a robbery of diamonds, watches, money, and drugs. (Dkt. 165 at 1–2). Section 1951(a) punishes a person who:

in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery ... or ... *conspires so to do,* or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section. ...

18 U.S.C. § 1951(a) (emphasis added). Further, 18 U.S.C. § 1951(b)(1) defines "robbery" as:

the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

## B. Categorical Approach

The question of whether an offense is a "crime of violence" calls for the application of the categorical approach. *Taylor v. United States,* 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *accord Hill,* 832 F.3d at 139 ("To determine whether an offense is a crime of violence, courts employ what has come to be known as the 'categorical approach.'").

Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute. In doing so, courts look only to the statutory definitions—*i.e.,* the elements—of the offense, and *not* to the particular underlying facts. .... As relevant here, the categorical approach requires us to consider the minimum conduct necessary for a conviction of the predicate offense (in this case, a Hobbs Act [conspiracy] ), and then to consider

whether such conduct amounts to a crime of violence. . . .

*Hill*, 832 F.3d at 139 (citations, quotations, and alterations omitted) (emphasis in original). Moreover, when applying the categorical approach, "there must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence." *Id.* at 140 (quotations omitted). In other words, the question before the Court is whether the elements of a Hobbs Act conspiracy charged in Count 1—not the actual facts upon which that count is based—necessarily require conduct constituting a crime of violence under 18 U.S.C. § 924(c)(3).

### C. *United States v. Hill*

In *Hill*, the Second Circuit held that a Hobbs Act *robbery* (as opposed to a Hobbs Act conspiracy, as is at issue in this case) constitutes a crime of violence under either definition of "crime of violence," that is, both the force clause and risk-of-force clause of § 924(c)(3). *Id.* at 140–50.

### 1. Force Clause

With respect to the force clause, the Second Circuit noted its previous holding that Hobbs Act conspiracy "is a crime of violence under the Bail Reform Act (which employs the same definition of the term as in § 924(c)(3)) because one of the elements of the offense 'is actual or threatened use of force' and 'if the element of violence is not present, no conviction under section 1951 can occur.'" *Id.* at 140 (quoting *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991)). The Second Circuit observed that "at least two of the ways in which a Hobbs Act robbery may be accomplished (by means of 'actual or threatened force' or 'violence') would appear, self-evidently, to satisfy § 924(c)'s force clause." *Id.*

With respect to the third way, the Second Circuit rejected Hill's argument that the minimum conduct necessary to commit a Hobbs Act robbery—putting a person in "fear of injury . . . to his person or property"—was not categorically a crime of violence under *Johnson v. United States*, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) ("*Johnson I*"). Hill had argued that the threatened physical force must be "violent," "great," or "strong" and he offered hypotheticals where the victim could be in fear of injury to his property without the threat of physical force. *Hill*, 832 F.3d at 141. In *Johnson I*, the Supreme Court "declined to construe 'physical force' for the purposes of [the Armed Career Criminal Act ("ACCA"), 18 U.S.C.] § 924(e)(2)(B)(i) [which defines "violent felony," in part, as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another"] in line with the common-law crime of battery, which deemed the element of 'force' to be satisfied 'by even the slightest offensive touching.'" *Hill*, 832 F.3d at 141–42 (quoting *Johnson I*, 559 U.S. at 139, 130 S.Ct. 1265)). According to the Second Circuit, *Johnson I* did not interpret "physical force" for § 924(e)(2)(B)(I) to require "a particular quantum of force be employed or threatened"; rather, physical force "means simply *violent* force—that is, force capable of causing physical pain or injury to another person.'" *Id.* at 142 (quoting *Johnson I*, 559 U.S. at 140, 130 S.Ct. 1265)). Extending that reasoning to § 924(c)(3), the Second Circuit in *Hill* concluded that "physical force" for purposes of § 924(c)(3) "means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property." *Id.*

The Second Circuit further rejected Hill's argument that a defendant could commit Hobbs Act robbery without using physical force, such as by putting the vic-

tim in fear of injury by threatening to poison the victim, reasoning that the hypothetical is insufficient for two reasons. *Id.* at 142–43. First, the Second Circuit concluded that courts were unlikely to apply the Hobbs Act to reach that type of conduct. *Id.* Second, the Second Circuit observed that the Supreme Court has suggested that physical force encompasses even its indirect application. *Id.* at 143. For these reasons, the Second Circuit concluded that a Hobbs Act robbery is a crime of violence under the force clause. *Id.* at 144.

### 2. Risk–of–Force Clause

With respect to the risk-of-force clause, the Second Circuit concluded that even if Hobbs Act robbery did not constitute a crime of violence under the force clause, "such a robbery unequivocally qualifies as a crime of violence pursuant to § 924(c)(3)(B) because it, 'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Id.* at 145 (quoting 18 U.S.C. § 924(c)(3)(B)). In reaching that conclusion, the Second Circuit rejected Hill's argument that the risk-of-force clause was void for vagueness under *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) ("*Johnson II*"). In that case, the Supreme Court struck down the "residual clause" of ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague. ACCA provided two alternative definitions of "violent felony" for the purpose of a sentencing enhancement; the first involves "use of force," and the second is known as the "residual clause":

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added). The Supreme Court reasoned that "[t]wo features of the residual clause conspire to make it unconstitutionally vague." *Johnson II*, 135 S.Ct. at 2557. First, it "leaves grave uncertainty about how to estimate the risk posed by a crime," because the categorical approach "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. The Government warned that striking down the residual clause would cast doubt on "dozens" of criminal laws that use terms like "substantial risk." *Id.* at 2561. The Supreme Court distinguished those other laws on the ground that none "links a phrase such as 'substantial risk' to a confusing list of examples" like burglary, arson, extortion, or the use of explosives. *Id.* "More importantly," those other laws gauge the riskiness of the defendant's actual conduct, and not, as under the categorical approach, "to an idealized ordinary case of the crime." *Id.*

In *Hill*, the Second Circuit concluded that the reasoning of *Johnson II* did not apply to the risk-of-force clause because § 924(c)(3)(B) "does not involve the double-layered uncertainty present in *Johnson II*" as described above. *Hill*, 832 F.3d at 146. The Second Circuit explained:

> Assessing whether a felony, by its nature, poses a substantial risk that "physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B),

. . . is a far narrower and simpler undertaking than divining whether a felony, not being one of four enumerated, but disparate crimes, "otherwise involves conduct that presents a serious potential risk of physical injury to another," § 924(e)(2)(B)(ii). *Id.* at 146. In other words, the risk-of-force clause, unlike ACCA's residual clause, was not tied to a "mystifying list of offenses and no indeterminate 'otherwise' phraseology—a defining feature of the ACCA's residual clause that, in *Johnson II*, was understood to add an additional layer of uncertainty as to 'how much risk it takes for a crime to qualify as a violent felony.'" *Id.* (quoting *Johnson II*, 135 S.Ct. at 2558)). And, the language of the risk-of-force clause (defining predicate crimes as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") "is both narrower *and* easier to construe" than the residual clause (defining a predicate crime as one that "presents a serious potential risk of physical injury to another"). *Id.* at 148.

## D. Application to Hobbs Act Conspiracy

Prior to *Johnson*, the Second Circuit held that Hobbs Act conspiracy is a crime of violence. *United States v. Elder,* 88 F.3d 127, 129 (2d Cir. 1996) ("[A] Hobbs Act conspiracy to commit robbery is by definition a conspiracy that involves a substantial risk that physical force may be used against the person or property of another."); *DiSomma,* 951 F.2d at 496 (holding that Hobbs Act conspiracy is a crime of violence under Bail Reform Act, which uses the same definition of "crime of violence" as § 924(c)(3)). The Second Circuit's decision in *Hill* does not disturb that holding; to the contrary, as one district court observed, "the Second Circuit in *Hill* im-

plicitly approved of its prior holding in *DiSomma* . . . ." *United States v. Biba,* 09–cr–836 (DLI), 219 F.Supp.3d .347, 354, 2016 WL 6583635, at *5 (S.D.N.Y. Nov. 7, 2016). The *Biba* court—which concluded that a Hobbs Act conspiracy is a crime of violence—explained that, "[a]lthough this observation is dicta, this Court is bound by *DiSomma* until further guidance from the Circuit or the Supreme Court, especially where, as here, the Circuit tacitly reaffirmed its holding." *Id.* As additional support, the *Biba* court explained that "a conspiracy to commit a recognized crime of violence is itself a crime of violence," a principle that has been applied to a conspiracy to commit Hobbs Act robbery. *Id.* (citing *United States v. Patino,* 962 F.2d 263, 267 (2d Cir. 1992); *Elder,* 88 F.3d at 129). Thus, the district court in *Biba* concluded that the "contention that conspiracy to commit Hobbs Act robbery is not a crime of violence is meritless and is contradicted by both *Hill* and this Circuit's precedent." *Id.*

Other district courts to consider the issue following *Hill* agree that Hobbs Act conspiracy is a crime of violence under § 924(c)(3). *See, e.g., Diaz v. United States,* No. 14–CR–442 (JMF), 2017 WL 112609, at *2 (S.D.N.Y. Jan. 11, 2017) (rejecting, in context of 28 U.S.C. § 2255 motion, an argument that "conspiracy to commit Hobbs Act robbery is not a 'crime of violence'" because it "is squarely foreclosed by Second Circuit precedent"); *Colon v. United States,* No. 3:16–cv–01522 (JAM), 2017 WL 71652, at *1 (D. Conn. Jan. 6, 2017) (rejecting vagueness challenge to § 924(c)(3), in context of § 2255 motion, based on *Hill*); *Ubiera v. United States,* 16cv4959 (DLC), 03cr1102–04 (DLC), 2016 WL 4597616, at *2 (S.D.N.Y. Sept. 2, 2016) (rejecting *Johnson II*-based challenge to Hobbs Act conspiracy conviction, citing *Hill*).

■ Based on the foregoing, the Court finds that Hobbs Act conspiracy is a crime of violence. Defendants' arguments to the contrary are unpersuasive. Defendants primarily rely on a case from outside this Circuit, *United States v. Edmundson*, 153 F.Supp.3d 857 (D. Md. 2015), whose holding contradicts binding precedent from the Second Circuit and which does not bind this Court.[3] Defendants fail to mention— let alone distinguish—*Hill* and the district court cases within this Circuit that address whether a Hobbs Act conspiracy is a crime of violence. The Court declines to depart from that binding and persuasive authority. Accordingly, the Court denies Defendants' motion to dismiss Count 2 based on their argument that a Hobbs Act conspiracy is not a crime of violence.

## IV. DEFENDANTS' REQUESTS FOR SEVERANCE

■ In a motion filed on January 12, 2017 (Dkt. 179), McCoy seeks a severance because he anticipates that several witnesses will testify to statements made by Nix that would not be admissible against McCoy if he were tried alone. McCoy argues that the statements would not come into evidence as statements made in furtherance of a conspiracy, but rather are admissions by Nix that would be admissible pursuant to Fed. R. Evid. 801(d)(2) against Nix only. McCoy argues that Nix's statements made to various identified individuals "would serve to corroborate the testimony of the cooperating witnesses and would be highly prejudicial and inadmissible against Mr. McCoy." (Dkt. 179–1 at 6).

Nix also filed a motion for severance on January 12, 2017 (Dkt. 180), arguing that a severance is warranted due to the anticipated admission of statements that would come in as to McCoy and not Nix, and because there will be evidence admitted concerning the identification of McCoy at the scene of a robbery and his alleged involvement in prostitution, that would not pertain to Nix.

The Government filed a response in opposition to the motions to sever (Dkt. 184), arguing that both Defendants should be tried together as they are charged as members of a Hobbs Act conspiracy and narcotics conspiracy. According to the Government, there will be "significant overlap in the proof of these defendants," and the trial is expected to span multiple weeks involving dozens of witnesses, thus benefiting the goal of judicial economy. (*Id.* at 9). In addition, the Government represents that it will not offer any evidence implicating the Confrontation Clause violations addressed in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). (*Id.* at 10). Rather, according to the Government, the statements that it will seek to introduce would be admissible against both Defendants even if tried separately, as statements of co-conspirators pursuant to Fed. R. Evid. 801(d)(2)(E), or statements against penal interest pursuant to Fed. R. Evid. 804(b)(3). (*Id.*). Finally, the Government argues that Nix's speculative claim concerning spillover prejudice with respect to evidence pertaining to McCoy does not establish the requisite prejudice to justify a severance. (*Id.* at 11).

Rule 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Third Superseding

---

3. *Hill* remains binding on this Court, notwithstanding the fact that a petition for panel rehearing and/or reconsideration *en banc* is pending. *See United States v. Hill*, 2d Cir. 14–3872, Dkt. 127.

Indictment alleges a common scheme and conspiracy involving both Defendants to engage in Hobbs Act robberies and narcotics distribution. Thus, the charges against both Defendants are properly joined pursuant to Fed. R. Crim. P. 8(b). *See United States v. Uccio*, 917 F.2d 80, 87 (2d Cir. 1990) ("It is an 'established rule' that 'a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b).'" (citation omitted)).

Defendants contend that notwithstanding the proper joinder, a severance is warranted pursuant to Fed. R. Crim. P. 14 because they will be prejudiced by a joint trial. Pursuant to Rule 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

■ The decision to sever a trial pursuant to Fed. R. Crim. P. 14 is "confided to the sound discretion of the trial court." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). A trial court's decision concerning severance is considered "virtually unreviewable," and the denial of such a motion "will not be reversed unless appellants establish that the trial court abused its discretion." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). In order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial." *Id.*

Before granting a request for a severance, the party requesting the severance must demonstrate substantial prejudice: "When defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Astra Motor Cars*, 352 F.Supp.2d 367, 369–70 (E.D.N.Y. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)); *see also Cardascia*, 951 F.2d at 482 (in order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'").

■ There is a powerful presumption in favor of joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *see also Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). The Second Circuit has instructed that "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together," and "[j]oint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy. ..." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citations omitted); *see*

*also United States v. Van Sichem*, No. SS 89 Cr. 813 (KMW), 1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990) ("There is a strong presumption in favor of joint trials for jointly indicted defendants, particularly where, as here, the 'crimes charged involve a common scheme or plan.'") (quoting *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979)). Indeed, "joint trials serve the interests of the government, the accused, and the public by eliminating the additional expense and repetition associated with successive prosecutions." *Van Sichem*, 1990 WL 41746, at *1 (citing *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977)).

Here, severance is not warranted. Nix and McCoy are alleged to have participated in a common scheme and conspiracy to engage in Hobbs Act robberies and narcotics distribution. The trial is expected to last four to five weeks, with the Government having identified 88 potential witnesses, including the alleged victims of the various alleged robberies. (Dkt. 169). Even if each Defendant was tried separately, it appears as though much of the evidence that the Government intends to present would be admissible against either Defendant. *See United States v. Casamento*, 887 F.2d 1141, 1153 (2d Cir. 1989) ("[E]ven if each defendant had been tried separately, much of the evidence the government presented at the joint trial regarding the activities of alleged co-conspirators would have been admissible in the single-defendant trials."); *United States v. Proctor*, No. 10–CR–239S(3)(4), 2015 WL 798956, at *3 (W.D.N.Y. Feb. 26, 2015) ("[B]ecause all defendants are charged in the conspiracy counts, what Defendants identify as spillover evidence may actually be properly admissible against them."); *United States v. Friedman*, 635 F.Supp. 782, 784 (S.D.N.Y. 1986) ("[N]o defendant has been able to demonstrate that any evidence would be admissible at a joint trial which the government could not, if it wished, offer in a separate trial against him.").

In other words, as argued by the Government, the statements allegedly made by Nix will likely be offered not as admissions of a party opponent, but rather as statements made in furtherance of the alleged conspiracy, *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014) (in order to admit statement under Fed. R. Evid. 801(d)(2)(E), the court must find by a preponderance of the evidence that (1) there was a conspiracy, (2) its members included the declarant and the party against whom the statement is offered (not the party to whom the statement was made), and (3) the statement was made during the course of and in furtherance of the conspiracy), or as statements against penal interest, *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007) ("Admission of a statement under Rule 804(b)(3) hinges on 'whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" (citation omitted)); *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004) (statements by separately-indicted co-conspirator admissible as statements against penal interest because "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest"); *United States v. Taylor*, 17 F.Supp.3d 162, 175–76 (E.D.N.Y. 2014) (co-defendant's statement was admissible against himself and his co-defendant pursuant to Fed. R. Evid. 804(b)(3)). In other words, if admitted pursuant to either Fed. R. Evid. 801(d)(2)(E) or 804(b)(3), the statements would come in against both Defendants even if they were tried separately.

To the extent there is evidence that would be admissible against only one of

438

the Defendants, it can be addressed through appropriate instructions to the jury. *See Casamento*, 887 F.2d at 1153. The Second Circuit's decision in *United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980), relied upon by McCoy, does not dictate a different result. In *Figueroa*, the Second Circuit found that the district court's admission of a defendant's prior conviction under Fed. R. Evid. 404(b) to prove knowledge or intent against that defendant as part of the government's case-in-chief was erroneous because that particular defendant had raised no issue concerning knowledge or intent. *Id.* at 940–44. The Second Circuit deemed it a close question as to whether the incorrect admission of that prior conviction also warranted relief for the co-defendants, *id.* at 944, but nonetheless reversed their convictions as well, *id.* at 947. In reversing, the Second Circuit did not address the question of whether the prior conviction would have been properly admitted during a joint trial if it was admissible in the first place. *Id.* Indeed, the Second Circuit noted that "[u]nlike a Bruton confession, prior act evidence is not so inevitably prejudicial to co-defendants that the worth of limiting instructions can be totally discounted." *Id.* at 946.

Although *Figueroa* recognizes the potential prejudice to a co-defendant that may result when prior act evidence is admitted against another defendant, it does not require severance in every case. *See id.* at 944–45; *accord United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) ("First, the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." (quotations omitted)). Rather, *Figueroa* instructs that when the evidence admissible against one defendant creates a significant risk of prejudice to the co-de-

fendants, the district court must also ask "whether the evidence is admissible in a joint trial, even though limited by cautionary instructions to the 'case' of a single defendant." *Figueroa*, 618 F.2d at 944.

The *Figueroa* court distinguished between the risk of prejudice to co-defendants that arises "if the jury were simply to draw an adverse inference against the co-defendants because of their association with a defendant shown to have a prior criminal record," which could be curtailed by adequate limiting instructions, and the risk that arises "when evidence of a defendant's prior act, like a Bruton confession, tends to prove directly, or even by strong implication, that the co-defendants also participated in the prior act." *Id.* at 946. The risk of prejudice to the codefendants in *Figueroa* tended toward the latter end of that spectrum; the case turned on the credibility of one witness, so evidence of the prior conviction would enhance that witness's credibility and assure the conviction of the co-defendants. *See id.* at 946–47. Thus, in *Figueroa*, it was "doubtful whether the risk of prejudice to co-defendants can be adequately safeguarded by limiting instructions." *Id.* at 947. Other circumstances influenced the *Figueroa* court's balancing of prejudice against the benefit of a joint trial: first, the prior conviction evidence was inadmissible as to the defendant involved in the conviction, and second, the interest in a joint trial was diminished because the trial was brief. *See id.* at 947–48.

In this case, neither Defendant identifies the scope of the possible prejudice that may arise from evidence that is admissible with respect to only his co-defendant, let alone prejudice comparable to that identified by the Second Circuit in *Figueroa*.[4]

4. Although both McCoy and Nix have prior

felony convictions, the Government has repre-

 

Any concerns of potential prejudice can be appropriately addressed through limiting instructions. *See Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("The risk of prejudice will vary with the facts in each case ... but... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). Moreover, the circumstances that influenced the court's conclusion with respect to the co-defendants in *Figueroa* do not appear to be present here; as discussed, it appears that the evidence would be admissible against either defendant, and the interest in a joint trial is more significant given its length and complexity. Therefore, Defendants' motions to sever are denied.

## V. CONCLUSION

For the reasons set forth above, the Court denies: (1) Defendants' renewals of their previously-filed pretrial motions, as set forth in the motion filed by McCoy at Docket 179 and the motion filed by Nix at Docket 180; (2) Defendants' motions to dismiss Counts 5 and 6 of the Third Superseding Indictment on the ground that the charges fail to recite an essential element of the substantive offense necessary for a finding of a Hobbs Act robbery, as set forth in the motion filed by McCoy at Docket 179 and the motion filed by Nix at Docket 180; (3) Defendants' motions to dismiss Count 2 of the Third Superseding Indictment on the ground that a Hobbs Act conspiracy is not a crime of violence, as set forth in the motion filed by Nix at Docket 180 and the motion filed by McCoy at Docket 183; and (4) Defendants' motions for severance, as requested in the

motion filed by McCoy at Docket 179 and the motion filed by Nix at Docket 180.

SO ORDERED.

---

sented that it believes such evidence would only become relevant pursuant to Fed. R. Evid. 404(b) "in the event that knowledge and intent become contested issues at trial. Accordingly, at this stage of the proceedings, the government does not seek to offer such evidence and merely reserves its right to do so." (Dkt. 172 at 16).